## WELLER v. PEOPLE OF STATE OF NEW YORK.

### ERROR TO THE COURT OF SPECIAL SESSIONS OF THE CITY OF NEW YORK, STATE OF NEW YORK.

No. 349. Argued April 28, 29, 1925.—Decided May 25, 1925.

1. A state law forbidding and penalizing the engaging without a license in the business of re-selling theater tickets does not violate the Fourteenth Amendment. P. 325.
2. The provisions of the New York General Business Law, as amended, c. 590, 1922, requiring theater ticket brokers to give bond and obtain a license are separable and workable apart from those restricting the price at which the tickets may be resold, so that the validity of the former is independent of the validity of the latter. *Id.*

207 App. Div. N. Y. 337; 237 N. Y. 316, affirmed.

ERROR to a judgment of the Court of Special Sessions of the City of New York adjudging the plaintiff in error guilty of reselling theater tickets without a license, entered after successive affirmances by the Supreme Court, Appellate Division, and the Court of Appeals.

*Mr. Louis Marshall,* for plaintiff in error.

Chapter 590 of the New York Laws of 1922 is unconstitutional and void, because it deprives the defendant of his liberty and property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

That the business of a ticket broker is a lawful one, that the pursuit of it cannot be prohibited, directly or indirectly, and that theatre tickets constitute property in the constitutional sense of the term, has been expressly adjudicated. *People ex rel. Tyroler* v. *Warden of the City Prison,* 157 N. Y. 116; *People ex rel. Fleischmann* v. *Caldwell,* 64 App. Div. 46; affd. 168 N. Y. 671; *People* v. *Marks,* 64 Misc. Rep. 679; *Collister* v. *Hayman,* 183 N. Y. 250; *Matter of Newman,* 109 Misc. Rep. 622.

The whole theory of such legislation is vicious and dangerous, and the precedent that would be created by sustaining the act now under consideration would be an invasion of liberty, calculated to work lasting injury not only to the individual but to the public welfare. There are limitations on the power of the legislature to fix the price of commodities or of services, or to limit the right to contract with regard to them. *People* v. *Budd,* 117 N. Y. 15, affd. *sub. nom. Budd* v. *New York,* 143 U. S. 517; *Adkins* v. *Children's Hospital,* 261 U. S. 525; *Adams* v. *Tanner,* 244 U. S. 590; *Fisher Co.* v. *Woods,* 187 N. Y. 90; *Producers Transportation Co.* v. *Railroad Commissioners,* 251 U. S. 230; *Michigan Public Utilities Commission* v. *Duke,* 266 U. S. 570. Carefully adjudicated cases have denied the power of the legislature to fix the price of theatre tickets. *People* v. *Newman,* 109 Misc. 622; *Ex parte Quarg,* 149 Cal. 79; *People* v. *Steele,* 231 Ill. 340; *City of Chicago* v. *Powers,* 231 Ill. 531; *People* v. *Weiner,* 271 Ill. 74; *Chicago* v. *Netcher,* 183 Ill. 104.

The business of conducting a theatre, and consequently of selling or procuring tickets of admission, is not affected by a public interest, in the sense that the legislature may fix the price at which such tickets may be sold by brokers or limit the compensation chargeable by brokers for procuring them. *Charles Wolff Packing Co.* v. *Court of Industrial Relations,* 262 U. S. 522; *Dorchy* v. *Kansas,* 264 U. S. 286.

Assuming that, if standing alone, that part of the statute requiring the taking out of a license and the giving of a bond could be sustained, the fact that, by compliance, the licensee would be estopped from questioning the other provisions, renders the act unconstitutional in its entirety; *Musco* v. *United Surety Co.*, 196 N. Y. 459; *Guffanti* v. *National Surety Co.*, 196 N. Y. 453; *Russo* v. *Illinois Surety Co.*, 141 App. Div. 690; *Huson* v. *Brown*, 90 Misc. 175; *Pierce* v. *Somerset Railway*, 171 U. S. 641; *Pullman Co.* v. *Kansas*, 216 U. S. 56; *Wall* v. *Parrot Silver & Copper Co.*, 244 U. S. 407; *Pierce Oil Corp.* v. *Phoenix Refining Co.*, 259 U. S. 125; *St. Louis Co.* v. *Prendergast Co.*, 260 U. S. 461; *Matter of Cooper*, 93 N. Y. 507; *Embury* v. *Conner*, 3 N. Y. 511; *Mayor, etc. of New York* v. *Manhattan Railway Co.*, 143 N. Y. 1. If the licensing provision of the act standing by itself were constitutional, the defendant could not be charged with a misdemeanor for non-compliance therewith if the price-fixing clauses of the act are invalid and he would be precluded from attacking them, because of his compliance with the licensing provision. *Ex parte Young*, 209 U. S. 123; *Harrison* v. *St. Louis & San Francisco R. R. Co.*, 232 U. S. 318; *Mercantile Trust Co.* v. *Texas, etc., Ry. Co.*, 216 Fed. 225. That a statute unconstitutional in a part essential and vital to its whole scheme cannot be enforced by the courts in its other provisions is likewise a well settled principle. *Lemke* v. *Farmers Grain Co.*, 258 U. S. 50; *International Textbook Co.* v. *Pigg*, 217 U. S. 91; *Hill* v. *Wallace*, 259 U. S. 44; *Pollock* v. *Farmers Loan & Trust Co.*, 158 U. S. 601; *Howard* v. *Illinois Central R. R. Co.*, 207 U. S. 463; *Sherrill* v. *O'Brien*, 188 N. Y. 185; *Hauser* v. *North British & Mercantile Ins. Co.*, 152 App. Div. 91. The provision in § 174 of the statute " that in case it is judicially determined that any section of this article is unconstitutional or otherwise invalid, such determination

shall not affect its validity or effect of the remaining provisions of the article " does not militate against the authorities considered under the foregoing subdivisions of this point. *Hill* v. *Wallace,* 259 U. S. 70. In none of the courts below was there any attempt to sever the license provision from the price-fixing provision.

*Mr. Robert D. Petty,* with whom *Messrs. Joab H. Banton,* District Attorney of New York County, and *Felix C. Benvenga* were on the brief, for defendant in error.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

Chapter 590, New York Laws 1922, added eight sections, 167–174, to the General Business Law of the State. They are copied in the margin.* Section 168 directs: " No per-

---

\* § 167. *Matters of Public Interest.* It is hereby determined and declared that the price of or charge for admission to theatres, places of amusement or entertainment, or other places where public exhibitions, games, contests or performances are held is a matter affected with a public interest and subject to the supervision of the state for the purpose of safeguarding the public against fraud, extortion, exorbitant rates and similar abuses.

§ 168. *Reselling of Tickets of Admission; Licenses.* No person, firm or corporation shall resell or engage in the business of reselling any tickets of admission or any other evidence of the right of entry to a theatre, place of amusement or entertainment, or other places where public exhibitions, games, contests or performances are held without having first procured a license therefor from the comptroller. Such license shall be granted upon the payment by or on behalf of the applicant of a fee of one hundred dollars and shall be renewed upon the payment of a like fee annually. Such license shall not be transferred or assigned, except by permission of the comptroller. Such license shall run to the first day of January next ensuing the date thereof, unless sooner revoked by the comptroller. Such license shall be granted upon a written application setting forth such information as the comptroller may require in order to enable him to carry into effect the provisions of this article and shall be accompanied by

son, firm or corporation shall resell or engage in the business of reselling any tickets of admission or any other evidence of the right of entry to a theatre, place of amusement or entertainment, or other places where public exhibitions, games, contests or performances are held without having first procured a license therefor from the comptroller." And § 173 declares every ·violation of the inhibition shall be a misdemeanor.

By an information in the Court of Special Sessions, New York City, the District Attorney accused plaintiff in error of engaging in the business. of reselling theatre tickets without the license required by law. The evidence showed he was engaged in that business, and it was conceded he had never taken out a license or complied with Chapter·

---

proof satisfactory to the comptroller of the moral character of the applicant.

.§ 169. *Bond.* The comptroller shall require the applicant for a license to file with the application therefor a bond in due form to the people of the state of New York in the penal sum of one thousand dollars, with two or more sufficient sureties, who shall be freeholders within the state of New York, conditioned that the obligor will not be guilty of any fraud or extortion, and will not exact or receive a price for any such ticket or evidence of the right of entry in excess of the price authorized by this article. The comptroller shall keep books wherein shall be entered in alphabetical order all licenses granted and all bonds received by him as provided for in this article, the date of the issuance of such licenses and the filing of such bonds, which record shall be open to public inspection. A suit to recover on the bond required to be filed by the provisions of this article may be brought by the comptroller or on the relation of any· party aggrieved in a court of competent jurisdiction, and in the event that the obligor named in such bond has violated any of the conditions of such bond, recovery for the full penal sum of such bond may be had in favor of the people of the state.

§ 170. *Revocation of licenses.* In the event that any licensee shall be guilty of any fraud or misrepresentation or shall charge for any ticket a price in excess of the price authorized by this article or otherwise violate any of the provisions of this article or any other law or local ordinance, the comptroller shall be empowered, on giving

590. His defense rested upon the claim that the statute is repugnant to the Fourteenth Amendment. The trial court adjudged him guilty and imposed a fine of twenty-five dollars. This was affirmed by the Appellate Division and by the Court of Appeals. 207 App. Div. 337; 237 N. Y. 316. In an extended opinion the latter court upheld the challenged enactment, but said nothing of the

ten days' notice by mail to such licensee, and on affording such licensee an opportunity to answer the charges made against him, to revoke the license issued to him.

§ 171. *Supervision of comptroller.* The comptroller shall have the power, upon complaint of any citizen or of his own initiative, to investigate the business, business practices and business methods of any such licensee if in the opinion of the comptroller such investigation is warranted. Each such licensee shall be obliged, on request of the comptroller, to supply such information as may be required concerning his business, business practices or business methods.

§ 172. *Restriction as to Price.* No licensee shall resell any such ticket or other evidence of the right of entry to any theatre, place of amusement or entertainment, or other place where public exhibitions, games, contests or performances are given at a price in excess of fifty cents in advance of the price printed on the face of such ticket or other evidence of the right of entry. Every person, firm or corporation who owns, operates or controls a theatre, place of amusement or entertainment, or other place where public exhibitions, games, contests or performances are held shall, if a price be charged for admission thereto, print on the face of each such ticket, or other evidence of the right of entry the price charged therefor by such person, firm or corporation.

§ 173. *Violations; Penalties.* Every person, firm or corporation who resells any such ticket or other evidence of right of entry or engages in the business of reselling any such ticket or other evidence of the right of entry, without first having procured the license prescribed and filing of a bond required by this article shall be guilty of a misdemeanor. Every person, firm or corporation who violates any provisions of this article shall be guilty of a misdemeanor.

§ 174. *Constitutionality of Article.* In case it be judicially determined that any section of this article is unconstitutional or otherwise invalid, such determination shall not affect the validity or effect of the remaining provisions of the article

possibility of sustaining the license provisions if those relating to resale prices were invalid.

Counsel for plaintiff in error now insists that the two provisions are inseparable; that those which undertake to establish resale prices are. clearly invalid; and, consequently, the whole Act must fall. On the contrary, counsel for the people maintain that the power of the State to require such licenses is clear and that we need not determine the validity of the price restrictions.

It is not and, we think, it cannot seriously be urged that the State lacked power to require licenses of those engaging in the business of reselling theatre tickets. The conviction and sentence were for failure to observe that requirement. In the absence of an authoritative announcement of another view by some court of the State we shall hold this provision severable and valid. *Brazee v. Michigan,* 241 U. S. 340. The statute itself declares (§ 174): " In case it be judicially determined that any section of this article is unconstitutional or otherwise invalid, such determination shall not affect the validity or effect of the remaining provisions of the article." If § 172, which restricts resale prices were eliminated, a workable plan would still remain. See *Dorchy* v. *Kansas,* 264 U. S. 286.

The judgment of the court below is *affirmed.*