[File No. 7124]

ERNEST TOOZ, and others similarly situated, Appellant, v. STATE OF NORTH DAKOTA, H. W. Swenson, Treasurer of the State of North Dakota, The State of North Dakota doing business as The Bank of North Dakota, The Bar Association of the State of North Dakota, and George A. Soule, President of the Bar Association of the State of North Dakota, Respondents.

(38 NW2d 285)

Opinion filed June 28, 1949.

*J. K. Murray,* for appellant.

*P. O. Sathre,* Attorney General, *Nels G. Johnson, Robert A. Birdzell, Strutz & Jansonius,* for Respondent.

CHRISTIANSON, J. The plaintiff Tooz brought this action to recover $7.50 for moneys had and received. He also asks for injunctive relief and for a declaratory judgment. Plaintiff's action is predicated upon the proposition that the moneys which he seeks to recover were exacted from him, and were received and are now held by the defendants, by virtue of an unconstitutional statute.

Plaintiff alleges that on or about November 1947 it became necessary for him to file an action in the office of the clerk of the district court of Dunn County and that he was required to pay and did pay to the clerk of said district court $7.50 to have said action filed. That on or about August 16, 1948, he took and perfected an appeal to the supreme court from a judgment of the district court of Dunn County and that he was required to pay and did pay to the clerk of the supreme court $15.00 to have said appeal filed. That the payment of such amounts was exacted from the plaintiff by the said clerk of the district court and by the clerk of the supreme court respectively pursuant to the provisions of Chapter 228, Laws 1947.

Said Chapter 228, Laws 1947, amended and reenacted certain sections of ND Rev Code 1943, relating to the fees to be charged and collected by the clerks of the district court and by the clerk of the supreme court and increased the fee to be charged and collected by a clerk of the district court for the filing of an action from $5.00 to $7.50 and increased the fee to be charged and collected by the clerk of the supreme court on the filing of the record on an appeal from $10.00 to $15.00. Plaintiff contends that said Chapter 228, Laws 1947, is unconstitutional and wholly void and that consequently the legal fees to be charged for such services by a clerk of the district court and by the clerk of the supreme court continue as they were fixed under the former law. Plaintiff alleges that he paid under protest $2.50 of the amount charged and collected by the clerk of the district court, and $5.00 of the amount charged and collected by the clerk of

the supreme court. That before the commencement of this action he filed a duly verified claim with the State of North Dakota for the sum of $5.00, and that said claim was rejected by the State Auditor and the State Auditing Board on or about September 1948. He also alleges that the clerk of the district court of Dunn County paid to the secretary-treasurer of the defendant Bar Association of North Dakota $2.50 of the money which the plaintiff paid to the said clerk and that such Association thereafter deposited such money with the defendant Bank of North Dakota and that said deposit is still with said bank; that the clerk of the supreme court did not remit to the State Bar Association the $5.00, which the plaintiff claims was illegally exacted as a part of the $15.00 which he was required to pay in order to have the appeal filed, but that said clerk of the supreme court deposited the same with the State Treasurer and that the same is still held by the State Treasurer.

The plaintiff alleges that he brings "this action in his own behalf and in behalf of others similarly situated, especially those litigants who have been represented by the attorney for the plaintiff since said law and statute went into effect." He further alleges "that unless the defendants are restrained and enjoined from doing the unlawful things under said statute they will continue to extort from the litigants of North Dakota the unlawful fees for the benefit of said Bar Association of the State of North Dakota, hereinbefore mentioned, that the defendant Bank of North Dakota and the defendant State Treasurer hold the money now deposited with them in trust for the amount of money the plaintiff paid as aforementioned, and in trust for all other litigants who have paid the fees aforementioned for the defendant Bar Association of the State of North Dakota." The plaintiff prays for judgment against the defendant State of North Dakota, the State Treasurer of the State of North Dakota, the State Bank of North Dakota, and the State Bar Association of the State of North Dakota for the sum of $7.50; also "for judgment in favor of other persons similarly situated, especially those litigants represented by the attorney for the plaintiff who paid their respective court fees under protest for the re-

spective amounts such litigants so paid;" and that the defendants and each of them together with the clerks of the district courts and the county judges and their clerks of the several counties in the State be restrained and enjoined from collecting the increased fees provided by Chapter 228, Laws 1947. The plaintiff also prays for a declaratory judgment adjudging that said statute, to-wit, Chapter 228 Session Laws of the State of North Dakota 1947 and each and every section thereof, is unconstitutional and void.

The defendants interposed a demurrer to the complaint on the grounds, (1) that there is a defect of parties defendant, (2) that several causes of action have been improperly united, and (3) that the complaint does not state facts sufficient to constitute a cause of action. After due hearing the trial court made an order sustaining the demurrer. In such order the court recited that it had filed therewith a memorandum opinion. In such memorandum opinion the court stated that the demurrer was sustained on all the grounds stated therein, and that "plaintiff made no application to amend his complaint and declined the privilege extended to the plaintiff by the court and elected to stand on his complaint and urged the court to make an immediate order carrying out the ruling sustaining the demurrer that the plaintiff might immediately appeal." Plaintiff has appealed from the order sustaining the demurrer.

As said, this action is predicated solely on the proposition that Chapter 228, Laws 1947, is unconstitutional; that consequently the provisions of such chapter fixing the amount of fees to be charged and collected by the clerk of the district court for the filing of an action and by the clerk of the supreme court on the filing of a record of an appeal are void and that fees charged and collected by the clerk of the district court and by the clerk of the supreme court from the plaintiff under said Chapter 228 in excess of those fixed by subsection 1 of § 11–1704 and § 27–0305, ND Rev Code 1943, were exacted without authority of law.

Sec. 11–1704, ND Rev Code 1943, so far as material here, read as follows:

"11–1704. The clerk of the district court shall charge and collect the following fees:

1. For the filing of an action, including an action transferred from another county, and for all things in connection therewith which are not hereinafter provided for, five dollars; . . . ."

Said subsection 1, § 11–1704 was reenacted in said Chapter 228 Laws 1947, in the identical language in which it is found in ND Rev Code 1943 with the single exception that the words "five dollars" were changed to read "seven dollars and fifty cents." In other words the sole change made in § 11–1704 as a result of the amendment and reenactment of said subsection 1 thereof by said Chapter 228, Laws 1947, was to increase the fee to be charged and collected by the clerk of the district court for filing an action from $5.00 to $7.50.

Sec. 27–0305, ND Rev Code 1943, read as follows:

"The clerk of the supreme court shall charge and collect in advance a fee of ten dollars upon the filing in the supreme court of the record in any cause upon appeal, or upon the filing in such court of a petition in any cause seeking the exercise of the original jurisdiction thereof."

Said § 27–0305, ND Rev Code 1943, was reenacted in said Chapter 228 in the identical language in which it existed in the former law with the single exception that the words "ten dollars" were changed to "fifteen dollars." In other words the said Chapter 228 amended and reenacted the former provision so as to increase the fee to be paid upon the filing of a record on appeal to the supreme court from $10.00 to $15.00.

Said Chapter 228, Laws 1947, also amended certain other sections of ND Rev Code 1943, among others, ND Rev Code 1943, § 11–1705 and § 27–0306. Said § 11–1705 required the clerk of the district court to keep as a public record in his office a book in which he was required to enter all moneys received by him as fees for services as such clerk and provided that within three days after the close of each calendar month and also at the close of his term of office he should file with the county auditor a statement under oath showing the amount of fees received and should deposit the fees so collected and reported

with the county treasurer, and prescribed a penalty for neglect or omission to charge or collect the appropriate fees and for failing or neglecting to keep a record of the same and making a statement thereof to the county auditor. This section was re-enacted in said Chapter 228, Laws 1947, without change except there was aded thereto at the end thereof the following provision:

"The county treasurer shall remit monthly from the funds so received to the secretary-treasurer of the bar association of North Dakota two dollars and fifty cents for each action filed in the district court including an action transferred from another county."

Said § 27–0306, ND Rev Code 1943, read as follows:

"27–0306. The clerk of the supreme court shall keep an accurate account of all fees received by him and shall deposit such fees monthly with the state treasurer."

This section was reenacted and amended by said Chapter 228, Laws 1947, to read as follows:

"27–0306. The clerk of the supreme court shall keep an accurate account of all fees received by him and shall deposit ten dollars of such fees monthly with the state treasurer and five dollars shall be remitted by him to the secretary-treasurer of the bar association of North Dakota."

It is a fundamental principle of constitutional law that a person can be heard to question the constitutionality of a statute only when and insofar as it is being, or about to be, applied to his disadvantage. State ex rel. Hughes v. Milhollan, 50 ND 184, 195 NW 292; Minot Special School Dist. v. Olsness, 53 ND 683, 208 NW 968, 45 ALR 1337; Olson v. Ross, 39 ND 372, 167 NW 385; 16 CJS p 157; 11 Am Jur 748 et seq., Constitutional Law. It follows "that one may not urge the unconstitutionality of a statute who is not harmfully affected by the particular feature of the statute alleged to be in conflict with the constitution." 16 CJS p 161.

In Olson v. Ross, supra, this Court said:

"A constitutional question does not arise merely because it is raised and a decision thereon sought. A party who assails

the validity of a statute on constitutional grounds must show that he is prejudiced by the alleged unconstitutional provision, and that a decision on the constitutional question is necessary in order to protect him in the enjoyment of the rights guaranteed to him by the Constitution. 'Courts will not assume to pass upon constitutional questions unless properly before them, and the constitutionality of a statute will not be considered and determined by the courts as a hypothetical question. It is only when a decision on its validity is necessary to the determination of the cause that the same will be made, and not then at the instance of a stranger, but only on the complaint of those with the requisite interest. These principles have been recognized by the Supreme Court of the United States. That tribunal has announced that it rigidly adheres to the rule never to anticipate a question of constitutional law in advance of the necessity of deciding it, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied, and never to consider the constitutionality of state legislation unless it is imperatively required.' 6 RCL, Sec 74, pp 76, 77." 39 ND p 382, 167 NW p 386.

"In any case, the court will ordinarily inquire into the constitutionality of a statute only to the extent required by the case before it, and will not formulate a rule broader than that necessitated by the precise situation in question. So, where that portion of a statute which is involved in a controversy is complete in itself, the court will not consider a question as to the constitutionality of another portion of the statute, which is not necessarily involved." 16 CJS p 215.

A statute may be in part constitutional and in part unconstitutional. Indeed the constitutional and unconstitutional provisions may be contained in the same section and yet be perfectly distinct and separable so that the first may stand though the last fall. 11 Am Jur 834, 839, Constitutional Law, § 152; 1 Cooley's Constitutional Limitations, 8th ed pp 359 et seq.; 59 CJ pp 639–640; State v. Ehr, 57 ND 310, 221 NW 883; State ex rel Hughes v. Milhollan, 50 ND 184, 195 NW 292, supra; State ex rel. Fargo v. Wetz, 40 ND 299, 168 NW 835, 5 ALR 731;

Weller v. New York, 268 US 319, 69 L ed 978, 45 S Ct 556; Champlin Ref. Co. v. Corporation Commission, 286 US 210, 76 L ed 1062, 52 S Ct 559, 86 ALR 403.

"It is a fundamental principle that a statute may be constitutional in one part and unconstitutional in another part and that if the invalid part is severable from the rest, the portion which is constitutional may stand while that which is unconstitutional is stricken out and rejected." 11 Am Jur 834, Constitutional Law § 152.

Cooley (1 Cooley's Const. Limitation, 8th ed pp 359 et seq.) says:

"It will sometimes be found that an act of the legislature is opposed in some of its provisions to the constitution, while others, standing by themselves, would be unobjectionable. . . . In any such case the portion which conflicts with the constitution, or in regard to which the necessary conditions have not been observed, must be treated as a nullity. Whether the other parts of the statute must also be adjudged void because of the association must depend upon a consideration of the object of the law, and in what manner and to what extent the unconstitutional portion affects the remainder. A statute, it has been said, is judicially held to be unconstitutional, because it is not within the scope of legislative authority; it may either propose to accomplish something prohibited by the constitution, or to accomplish some lawful, and even laudable object, by means repugnant to the Constitution of the United States or of the State. A statute may contain some such provisions, and yet the same act, having received the sanction of all branches of the legislature, and being in the form of law, may contain other useful and salutary provisions, not obnoxious to any just constitutional exception. It would be inconsistent with all just principles of constitutional law to adjudge these enactments void because they are associated in the same act, but not connected with or dependent on others which are unconstitutional. Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each

other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall."

The chief difficulty which presented itself in construing and applying a statute in part constitutional and in part unconstitutional and in determining whether the constitutional provisions of the statute might stand and be enforced and the unconstitutional provisions be rejected arose from the questions whether the constitutional provisions of the statute were severable from the unconstitutional provisions in such way that the valid provisions standing alone could be given legal effect and whether it could be presumed that the legislature would have enacted the valid provisions with the invalid provisions stricken from the law. 11 Am Jur 838, 842, Constitutional Law. The question generally resolved itself into one of legislative intention and the tests used and applied by the courts in determining whether the constitutional parts of a law might be severed from the unconstitutional parts and sustained and enforced were connected with and based upon the ultimate factor as to what the legislature intended. 11 Am Jur 838, 842, Constitutional Law; 2 Sutherland, Statutory Construction, 3rd ed § 2403, p 176. In comparatively recent times the congress and the legislatures of the states have seen fit to embody in some statutes what is commonly known as a "saving clause" declaring that the valid portions of a statute shall remain in force and shall not be affected if other provisions of the act are held to be unconstitutional. 11 Am Jur 846 et seq., Constitutional Law § 156; 59 CJ § 207, p 647 et seq; 2 Sutherland, Statutory Construction, 3rd ed § 2408, p 182 et seq.

Such saving clauses have been recognized as valid and applied in many cases by the Supreme Court of the United States and by the highest courts of many states. Annotation: 73 L ed 288 et seq.; 11 Am Jur 847, Constitutional Law; Crowell v. Benson, 285 US 22, 76 L ed 598, 52 S Ct 285; Electric Bond

& S. Co. v. Securities & Exch. Com. 303 US 419, 82 L ed 936, 58 S Ct 678, 115 ALR 105; Weller v. New York, 268 US 319, 69 L ed 978, 45 S Ct 556, supra; Champlin Ref. Co. v. Corporation Commission, 286 US 210, 76 L ed 1062, 52 S Ct 559, 86 ALR 403, supra; State ex rel Crumpton v. Montgomery, 177 Ala 212, 59 So 294; Saari v. Gleason, 126 Minn 378, 148 NW 293; Borgnis v. Falk Co. 147 Wis 327, 357, 133 NW 209, 37 LRA NS 489, 3 NCCA 649; Re Schuler, 167 Cal 282, 139 P 685, Ann Cas 1915C 706; Bacon Serv. Corp. v. Huss, 199 Cal 21, 248 P 235; Ingels v. Riley, 5 Cal 2d 154, 53 P2d 939, 103 ALR 1; Board of Trade v. Olsen, 262 US 1, 67 L ed 839, 43 S Ct 470; Standard Lumber Co. v. Pierce, 112 Or 314, 228 P 812; Nipges v. Thornton, 119 Wash 464, 206 P 17; Re Hunter, 97 Colo 279, 49 P2d 1009, 101 ALR 1202; Charles C. Steward Mach. Co. v. Davis, 301 US 548, 81 L ed 1279, 57 S Ct 883, 109 ALR 1293.

The principles which underly the application of the saving clause have been well established by the decisions of the courts that have had an occasion to deal with the subject.

American Jurisprudence says: "In the absence of a legislative declaration that invalidity of a portion of a statute shall not affect the remainder, the presumption is that the legislature intends the act to be effective as an entirety. The effect of such a statutory declaration is to create, not the presumption of entirety in effect ordinarily accorded to statutes, but an opposite presumption of separability. The Supreme Court has stated that a saving clause clearly evidences a legislative intention not only that an express provision found to be unconstitutional should be disregarded without disturbing the remainder of the statute, but also that any implication from the terms of the statute which would render them invalid should not be indulged." 11 Am Jur 847–848, Constitutional Law.

In State ex rel. Crumpton v. Montgomery, 177 Ala 212, 59 So 294, the Supreme Court of Alabama said:

"It is of course not within legislative competency to bind the courts by any declaration or pronouncement in their unfettered functions of determining the constitutional validity of enactments. Yet we do not doubt that it is within legislative compe-

tency to remove, by express assertion in the act, any uncertainty, in the judicial mind, as to what the Legislature would have done in respect of the adoption of the act, with the invalid parts thereof stricken, before passage, therefrom."

In Saari v. Gleason, 126 Minn 378, 148 NW 293, supra, the Supreme Court of Minnesota applied the saving clause in construing a corrupt practices act. The court held that the valid provisions of the act were severable and enforceable after the elimination of a section therein, possibly invalid as vesting the court with discretionary power to set at naught the prohibitions of the statute. In the opinion in the case the court said:

"We know of no good reason why the legislature may not declare its intention that one part of a law may be separated from the balance, for the very purpose of saving the unobjectionable parts from being declared unconstitutional. We conceive that the rule to be applied under such a statute is that, if part of a law is unconstitutional, the remaining portion must nevertheless be sustained and given effect if enough is left to constitute an enforceable law."

In Bacon Serv. Corp. v. Huss, 199 Cal 21, 248 P 235, supra, the Supreme Court of Colorado said:

"It (the saving clause) was inserted in the act for the purpose of indicating to the court, when required to pass upon the constitutionality of the act or of any portion thereof, and to apply the rules of law applicable thereto, that the statute would have been enacted with the objectionable portions omitted in the event the court should conclude that said portions were separable and beyond the power of the Legislature lawfully to incorporate in the statute."

In Crowell v. Benson, supra, certain constitutional objections were raised to the Longshoremen's and Harbor Workers' Act. That act contained a saving clause. In an opinion written by Chief Justice Hughes the court said:

"We think that this requirement (saving clause) clearly evidences the intention of the Congress not only that an express provision found to be unconstitutional should be disregarded without disturbing the remainder of the statute, but also that

any implication from the terms of the Act which would render them invalid should not be indulged." 285 US 63, 76 L ed 619, 52 S Ct 285.

In Electric Bond & S. Co. v. Securities & Exch. Com., supra, the constitutionality of the Public Utility Holding Company Act was challenged by the defendants and intervenors. The Act contained a saving clause. In the opinion in that case the Supreme Court of the United States speaking through Chief Justice Hughes said:

"This provision (saving clause) reverses the presumption of inseparability—that the legislature intended the Act to be effective as an entirety or not at all. Congress has established the opposite presumption of divisibility. Williams v. Standard Oil Co., 278 US 235, 242, 73 L ed 287, 309, 49 S Ct 115, 60 ALR 596; Utah Power & L. Co. v. Pfost, 286 US 165, 184, 76 L ed 1038, 1048, 52 S Ct 348; Champlin Ref. Co. v. Corporation Commission, 286 US 210, 235, 76 L ed 1062, 1078, 52 S Ct 559, 86 ALR 403. Congress has thus said that the statute is not an integrated whole, which as such must be sustained or held invalid. On the contrary, when validity is in question, divisibility and not integration is the guiding principle. Invalid parts are to be excised and the remainder enforced. When we are seeking to ascertain the congressional purpose, we must give heed to this explicit declaration." 303 US 419, 434, 82 L ed 936, 944, 58 S Ct 678, 115 ALR 105.

The saving clause has been applied by the courts to legislative enactments relating to a variety of subjects. It was applied by the Supreme Court of the United States to the Longshoremen's and Harbor Workers' Act (Crowell v. Benson (US) supra) ; to the Public Utility Holding Company Act (Electric Bond & S. Co. v. Securities & Exch. Com. (US) supra) ; and to the Social Security Act (Charles C. Steward Mach. Co. v. Davis, 301 US 548, 81 L ed 1279, 57 S Ct 883, 109 ALR 1293, supra). In Board of Trade v. Olsen, 262 US 1, 67 L ed 839, 43 S Ct 470, supra, the Supreme Court of the United States held that the possible unconstitutionality of those portions of the Grain Futures Act which forbade the use of the mails and

interstate facilities of communication to offer or accept sales for future deliveries, or to send quotations of prices thereof, except through members of a board of trade, were separable from and did not invalidate the remainder of the act, inasmuch as the act contained a saving clause.

In Weller v. New York, 268 US 319, 69 L ed 978, 45 S Ct 556, supra, the Supreme Court of the United States held that the provisions of a statute requiring a license to engage in the business of reselling tickets to places of amusement, were severable, and that a conviction for engaging in such business without a license might be sustained although the provisions fixing the resale price were invalid, inasmuch as the statute contained a saving clause.

In Ingels v. Riley, 5 Cal 2d 154, 53 P2d 939, 103 ALR 1, supra, the Supreme Court of California held that provisions in a statute imposing a privilege tax on motor vehicles operated upon the state highways, invalid as beyond the legislative power, as exempting vehicles so taxed from further taxation according to value, and other provisions of the statute purporting to appropriate a portion of the funds collected for license fees under the act to cities for municipal purposes, in violation of the state Constitution, did not invalidate the remainder of the act, where the act contained a saving clause.

In In Re Hunter, 97 Colo 279, 49 P2d 1009, 101 ALR 1202, supra, the Supreme Court of Colorado held that the validity of that part of a statute enacted to provide funds for the payment of old age pensions and relief of aged indigent persons which imposed an additional inheritance tax is unaffected by any invalidity of the provisions in such act for an increase of corporation filing fees and motor vehicle fees for the same purposes.

In In Re Schuler, 167 Cal 282, 139 P 685, Ann Cas 1915C 706, supra, the Supreme Court of California held that a provision of the motor vehicle act authorizing the state treasurer to collect the fees imposed thereby must be upheld, where the statute contained a saving clause, notwithstanding the possible invalidity of a section of the act which assigned a part of the tax to be collected to the various counties.

In Nipges v. Thornton, 119 Wash 464, 206 P 17, supra, the Supreme Court of Washington held that even though a provision of the poll tax law which permitted the counties to retain a fraction of the amount collected were invalid, the remainder of the act would be upheld, and the whole amount collected go into the state treasury, the statute containing a saving clause.

In Standard Lumber Co. v. Pierce, 112 Or 314, 228 P 812, supra, the Supreme Court of Oregon held that an income tax act containing a saving clause is not invalidated as a whole by the invalidity of a provision therein discriminating against corporations having all or part nonresident stockholders, but that the valid provisions of the law will be given effect.

In Bacon Serv. Co. v. Huss, 199 Cal 21, 248 P 235, supra, the Supreme Court of California held that certain provisions of the motor vehicle transportation license act exempting operators of sight-seeing motor vehicles and those deriving receipts from United States mail contracts were unconstitutional but that such provisions were separable and did not operate to invalidate the remainder of the act, a saving clause providing that invalidity of any portion should not destroy the remainder and the court being required to support the legislative will so far as possible.

In Highland Farms Dairy v. Agnew, 300 US 608, 81 L ed 835, 57 S Ct 549, the Supreme Court of the United States held that:

"The validity of a state statute establishing a milk commission, with power to create within the state natural market areas and to fix the minimum and maximum prices to be charged for milk and cream therein, is not affected by the possible invalidity of a provision for the cancelation of the prices established for a market area if the cancelation is requested by a majority of the producers and distributors in such area, where the statute itself provides that if any part shall be declared unconstitutional the remainder of the Act shall not be affected thereby." (Headnote 7, 81 L ed at p 836).

It will be noted that Chapter 228, Laws 1947, reenacted and amended several sections of ND Rev Code 1943. These sec-

tions as embodied in ND Rev Code 1943 were in turn reenactments of separate sections in former codes. Said Chapter 228, Laws 1947, contained a saving clause,—a section declaring that if any of the provisions of the act shall be held invalid the remainder of the act shall not be affected thereby. It will be noted that the sections reenacted and amended in said Chapter 228 related to matters that were not interdependent and which might appropriately have been embodied in separate legislative enactments. Thus the fees to be charged by a clerk of the district court for certain services and the fees to be charged by the clerk of the supreme court for services might have been embodied in separate enactments. The fees to be charged by the clerk of the district court were not dependent upon or connected with the fees to be charged by the clerk of the supreme court and vice versa. And the fees to be charged and collected by such officers are matters different and distinct from what disposition shall be made of such fees or the purposes for which they may be expended. It is well settled that the legislature may provide for the collection of reasonable fees for services such as those performed by the clerks of the respective courts. Malin v. LaMoure County, 27 ND 140, 145 NW 582, 50 LRA NS 997, Ann Cas 1916C 207.

In the memorandum decision filed with the order sustaining the demurrer to the complaint the trial court said: "It is conceded on the argument by the counsel for the plaintiff and for the defendant that the fees provided to be paid for the act in question is not an unreasonable fee." The attack of the plaintiff upon said Chapter 228 is directed solely at the provisions thereof relating to payments to be made to the State Bar Association. The contention of the plaintiff is that the provisions of the law providing for payment of certain moneys to the State Bar Association instead of payment into the state and county treasuries is violative of certain provisions of the constitution. Plaintiff does not seek recovery for the benefit of the public. His position and contention is that inasmuch as the provisions for the payment of certain moneys to the State Bar Association is unconstitutional, the clerk of the supreme court and

the clerk of the district court had no authority to charge or collect the fees which said Chapter 228, Laws 1947 required them to collect and that the moneys which the plaintiff was required to pay and did pay to the clerk of the district court and to the clerk of the supreme court in excess of the fees prescribed by the law in force prior to the enactment of said Chapter 228, Laws 1947, are his moneys and that he is entitled to recover the same as moneys had and received.

Sec. 27–0305, ND Rev Code 1943, as amended and reenacted in § 1, Chapter 228, Laws 1947, is a complete legal enactment and is not dependent for its vitality or meaning upon any other provision.

"The clerk of the supreme court shall charge and collect in advance a fee of fifteen dollars upon the filing in the supreme court of the record in any cause upon appeal, or upon the filing in such court of a petition in any cause seeking the exercise of the original jurisdiction thereof." Sec. 1, Chapter 228, Laws 1947.

This provision is complete and may be enforced if all the other provisions of the chapter are stricken out. The same is true with respect to § 11–1704, ND Rev Code 1943, as amended by § 3, Chapter 228, Laws 1947.

We are not required to speculate as to whether the legislature would have enacted the provisions fixing the amount of fees to be collected by the clerk of the district court and by the clerk of the supreme court if those provisions stood alone. The legislature has specifically said that these provisions may and shall stand and be given full force and effect even though the legislature was without power to enact any of the other provisions of the chapter and if all such provisions must be rejected and eliminated.

We are all agreed that the provisions of said sections 11–1704 and 27–0305, ND Rev Code 1943, as amended and reenacted in said Laws 1947 are valid enactments and that it was incumbent upon the clerks of the said district and supreme courts to charge and collect the fees prescribed in the provisions as amended and reenacted. This is decisive of the action. The

moneys do not belong to the plaintiff and the plaintiff has no interest therein.

The only provisions of said Chapter 228, Laws 1947, which have been applied in the collection of such fees are the two sections fixing the amount of fees and making it the duty of the clerks of the respective courts to charge and collect the same. These provisions are valid enactments. It necessarily follows therefore that the complaint fails to state facts sufficient to constitute a cause of action for moneys had and received, and it also follows that it fails to state any cause of action for injunctive relief or for a declaratory judgment. Under well settled principles of constitutional law which have been fully stated above this court may not consider constitutional objections sought to be raised by the plaintiff against other provisions of said Chapter 228, Laws 1947. State v. Ehr, 57 ND 310, 221 NW 883, supra; Champlin Ref. Co. v. Corporation Commission, 286 US 210, 76 L ed 1062, 52 S Ct 559, 86 ALR 403, supra; People v. Victor, 287 Mich 506, 283 NW 666, 124 ALR 316; 16 CJS p 215.

The order sustaining the demurrer to the complaint is affirmed.

Nuessle, Ch. J., and Morris and Burke, JJ., and Grimson, Dist. J., concur.

Burr, J., did not participate.