## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 46742

EMPLOYERS  RESOURCE
MANAGEMENT CO.,

    Plaintiff-Appellant,

v.

TOM KEALEY, in his capacity as Director of
the IDAHO DEPARTMENT OF
COMMERCE,

    Defendant-Respondent.

Boise, November 2019 Term

Opinion filed: March 12, 2020

Karel A. Lehrman, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County.  Samuel Hoagland, District Judge.

The judgment of the district court is affirmed.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd., Boise, for Appellant.  Neil D. McFeeley argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent.  William S. Zanzig argued.

---

MOELLER, Justice.

Employers Resource Management Company ("Employers") has returned to this Court on its second appeal against the Idaho Department of Commerce. Having established competitor standing in *Employers Res. Mgmt. Co. v. Ronk*, 162 Idaho 774, 405 P.3d 33 (2017), Employers now argues that the Idaho Reimbursement Incentive Act is unconstitutional under the separation of powers doctrine. Below, the district court dismissed Employers's case upon finding the Act constitutional. We affirm.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

In 2014, the Idaho Legislature passed the Idaho Reimbursement Incentive Act ("IRIA") "to create incentives for businesses to move to Idaho or to significantly increase their workforces by way of a subsidy in the form of a refundable tax credit." *Id.* at 776, 405 P.3d at 35. In 2016, the Economic Advisory Council ("EAC")—a body created under IRIA to approve or deny tax

credit applications—granted a $6.5 million tax credit to the web-based Illinois corporation Paylocity, a competitor to Employers Resource Management Company. *Id.* Employers is an Idaho-based company that offers human resources services, including management, personnel file maintenance, sick leave and vacation reporting, employee handbooks, and so on. Employers asserts IRIA is unconstitutional and that Paylocity's tax credit creates an unfair economic advantage. Paylocity, however, has yet to receive the tax credit because it has not satisfied the conditions in the Tax Reimbursement Incentive agreement.

Employers filed a complaint for declaratory relief against the Idaho Department of Commerce on March 23, 2016.[1] The Department then moved to dismiss the complaint with prejudice pursuant to Idaho Rule of Civil Procedure 12(b)(6), arguing that Employers lacked standing to sue. Upon finding that Employers lacked standing to challenge IRIA, the district court dismissed the case. Employers appealed to this Court, which vacated the dismissal and held that Employers had competitor standing to challenge the governmental action that "alter[ed] the competitive landscape by providing an advantage to an economic competitor." *Employers Resource Mgmt. Co.,* 162 Idaho at 779–81, 405 P.3d at 38–40.

On remand, the parties filed cross-motions for summary judgment, with each motion focused on the constitutionality of IRIA. After concluding that IRIA did not violate the separation of powers provisions under the Idaho Constitution, the district court granted the Department's motion for summary judgment on January 3, 2019. The district court determined that IRIA did not "delegate unrestricted and unguided taxing power, but instead provides statutory requirements that each applicant must meet." Likewise, the court concluded that IRIA effectively provided a mechanism for judicial review for "aggrieved applicants, and injured non-applicants with competitor standing." The same day, the district court dismissed the case with prejudice. Employers timely appealed.

## II.     STANDARD OF REVIEW

A statute's constitutionality is a question of law that this Court freely reviews. *Alcohol Beverage Control v. Boyd,* 148 Idaho 944, 946, 231 P.3d 1041, 1043 (2010). In addition, this Court reviews a motion for summary judgment under the same standard of review utilized by the

---

[1] Employers initially brought the case against Megan Ronk in her capacity as Director of the Idaho Department of Commerce, who is now substituted by Tom Kealey, current Director of the Idaho Department of Commerce.

district court in ruling on the motion. *McGimpsey v. D&L Ventures, Inc.*, 165 Idaho 205, ___, 443 P.3d 219, 224 (2019).

> This Court must construe the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences in that party's favor. If reasonable people could reach different conclusions or inferences from the evidence, the motion must be denied. However, the nonmoving party must submit more than just conclusory assertions that an issue of material fact exists to withstand summary judgment. A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment. Instead, the nonmoving party must respond to the summary judgment motion with specific facts showing there is a genuine issue for trial.

*Id.* (quoting *Van v. Portneuf Med. Ctr.,* 147 Idaho 552, 556, 212 P.3d 982, 986 (2009)).

## III.    ANALYSIS

### A. IRIA does not violate the separation of powers doctrine under the Idaho Constitution.

The key inquiry on appeal is whether IRIA is constitutional under the separation of powers doctrine. Pursuant to Article II, section 1 of the Idaho Constitution, each governmental branch has distinct powers that cannot be delegated to another:

> The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.

All legislative power is vested exclusively in Idaho's Senate and House of Representatives, Idaho Const. art. III, § 1, while judicial power is vested in the courts. Idaho Const. art. V, § 2. Among the legislative powers is the power of taxation, including granting tax exemptions. Idaho Const. art. VII, § 5. Similarly, executive functions, such as carrying out legislative directives and policies, are vested in the governor and the executive branch agencies, "who shall see that the laws are faithfully executed." Idaho Const. art. IV, § 5. The Idaho Department of Commerce is an executive branch agency created by the legislature for the purpose of "administer[ing] the provisions of [Title 67, chapter 47, Idaho Code] and perform[ing] such other duties relating to commerce as may be imposed … by law." I.C. §§ 67-4701 and 67-4702.

Employers argues that IRIA violates these Constitutional provisions because the statute (1) unlawfully delegates legislative power to grant tax subsidies and (2) does not provide for any meaningful judicial review. We disagree.

**1. IRIA does not improperly delegate legislative authority.**

Employers argues that because IRIA lacks standards and guidelines to evaluate business applications, it gives "unbridled discretion" to the EAC, thereby constituting an unconstitutional delegation of legislative power to award tax credits. The Department contends that IRIA "falls well within the legislature's discretion to delegate fact-finding and policy implementation to an executive agency." The district court found that there were sufficient guidelines and a systematic process in place to determine eligibility for the available tax credits. In addition, the court held that IRIA is constitutional because it "requires all applicants to meet the same statutory requirements to qualify for a conditional tax credit, which applies to applicants in and out of state," and there are "structural safeguards against arbitrary decision-making by establishing multilevel departmental review." We agree with the district court's analysis.

Before delving into the separation of powers doctrine, we must first examine IRIA's provisions. As explained in the first *Employers* case:

> IRIA is intended to create incentives for businesses to move to Idaho or to significantly increase their workforces by way of a subsidy in the form of a refundable tax credit. IRIA authorizes the Department of Commerce to provide a business with a refundable tax credit for up to 15 years and up to 30% of the new revenue Idaho receives from the company's corporate income tax, payroll taxes, and sales and use tax attributable to a new project. I.C. § 67-4740. The benefits of IRIA are available to both new and existing businesses in any industry with a competitive project that adds a minimum of 20 new full-time, non-seasonal jobs in rural areas (50 new jobs in urban areas) that pay an average wage that equals or exceeds the wage for the county where the business is located. I.C. § 67-4738(11), (12).
>
> A business seeking the credit must apply to the Director of the Idaho Department of Commerce ("the Director"). I.C. § 67-4739. Among the requirements that the applicant must satisfy is "proof of a community match." I.C. § 67-4739(l)(c). The applicable local government unit must demonstrate "active support of the applicant," which may include "a contribution of money, fee waivers, in-kind services, the provision of infrastructure, or a combination thereof." I.C. § 67-4738(5).
>
> The Director conducts a technical review and economic impact analysis of each application. IDAPA 28.04.01.151.07. After the Director determines that the application meets the requirements of IRIA, the application is forwarded to the Economic Advisory Council ("the EAC"), a body created under authority of Idaho Code section 67-4704. The EAC reviews the application and may require that additional information be provided before approving or rejecting the application. I.C. § 67-4739. If the application is approved, the Director enters into an agreement with the applicant consistent with the terms of the EAC's

approval. I.C. § 67-4739(3). The EAC is given broad discretion to approve or deny applications for the IRIA tax credit.

*Employers Res. Mgmt. Co. v. Ronk*, 162 Idaho at 776, 405 P.3d at 35.

The specific guidelines and conditions for evaluating businesses for tax credits are contained in section 67-4739(1) of the Idaho Code:

(1) A business entity may claim a refundable tax credit for creating a minimum number of new jobs in the state of Idaho. In order to be considered for participation, an applicant or its designated representative must submit an application to the director and shall include:

(a) A complete description of the proposed project and the economic benefit that will accrue to the state as a result of the project;

(b) A description or explanation of whether the project will occur or how it will be altered if the tax credit application is denied by the council;

(c) Proof of a community match;

(d) A letter from the tax commission confirming that the applicant is in good standing in the state of Idaho and is not in unresolved arrears in the payment of any state tax or fee administered by the tax commission;

(e) A detailed statement with an estimate of Idaho goods and services to be consumed or purchased by the applicant during the term;

(f) Known or expected detriments to the state or existing industries in the state;

(g) An anticipated project inception date and proposed schedule of progress;

(h) Proposed performance requirements and measurements that must be met prior to issuance of the tax credit;

(i) A detailed description of the proposed capital investment;

(j) A detailed description of jobs to be created, an approximation of the number of such jobs to be created and the projected average wage to be paid for such jobs;

(k) A detailed description of the estimated new state tax revenues to be generated by the project;

(l) Identification of any individual or entity included within the application that is entitled to a rebate pursuant to section 63-3641 or 63-4408, Idaho Code, or is required to obtain a separate seller's permit pursuant to chapter 36, title 63, Idaho Code; and

(m) The federal employer identification or social security number for each individual or entity stated as the business entity in the agreement.

These application requirements are reflected in the evaluation and scoring process conducted by the Department on each application, as well as certain regulatory provisions promulgated by the

Department to guide its implementation and administration of IRIA. S*ee* IDAPA 28.04.01.001 through 28.04.01.220.

Despite the well-established law that the legislature cannot delegate its lawmaking powers to another authoritative body, "the legislature can empower an agency or an official to ascertain the existence of facts or conditions upon which the law becomes operative." *Kerner v. Johnson*, 99 Idaho 433, 450–51, 583 P.2d 360, 377–78 (1978). Essentially, the legislature can grant a "fact-finding" status to an authoritative body. *Boise Redevelopment Agency v. Yick Kong Corp.*, 94 Idaho 876, 885, 499 P.2d 575, 584 (1972). *See also Bd. of Cnty. Comm'rs of Twin Falls Cnty. v. Idaho Health Facilities Auth.*, 96 Idaho 498, 508, 531 P.2d 588, 598 (1974) ("[Respondent] has not been given unlimited discretion and authority. Its powers, as given in I.C. [§] 39-1447, do not give it any lawmaking power, but merely the power to determine facts necessary to carry out its functions, to regulate itself in carrying out the duties given to it by law, and to enter into agreements authorized by law.").

In determining whether a statute is an unconstitutional delegation of legislative power, this Court has examined whether the statute imposes guidelines on the decision-making body, or grants "unbridled" authority to that body. *Yick Kong Corp.*, 94 Idaho at 885, 499 P.2d at 584; *Kerner*, 99 Idaho at 450–51, 583 P.2d at 377–78; *Greater Boise Auditorium Dist. v. Royal Inn of Boise*, 106 Idaho 884, 886, 684 P.2d 286, 288 (1984). Thus, the crux of the analysis is an examination of whether the statute lacks "standards, guidelines, restrictions or qualifications of any sort placed in the delegating legislation." *See Royal Inn of Boise*, 106 Idaho at 886, 684 P.2d at 288. Such a lack of legislative guidance violates the Idaho Constitution's separation of powers doctrine as an unbridled delegation of lawmaking power, while the presence of such guidelines and restrictions creates a proper "fact-finding" status to ascertain the facts and conditions upon which the law becomes operative. *See id.*; *Kerner*, 99 Idaho at 450–51, 583 P.2d at 377–78. When conducting this analysis, the Court must also consider the "practical context of the problem to be remedied and the policy to be served." *Kerner*, 99 Idaho at 450–51, 583 P.2d at 377–78.

For example, in *State v. Kellogg*, a defendant was charged with selling a prescription drug without legal authority. 98 Idaho 541, 542, 568 P.2d 514, 515 (1977). At the time, the governing state law for defining prescription drugs conditioned that status on federal law and regulations issued by the Idaho Board of Pharmacy. *Id.* at 542–43, 568 P.2d at 515–16. The

6

defendant in *Kellogg* argued that the legislature failed to specify the criteria for defining prescription drugs, and thereby improperly delegated its legislative authority to the Board of Pharmacy and the federal government. *Id.* at 542–44, 568 P.2d at 515–17. The district court agreed, holding that "the statutory procedure by which a drug is classified as a prescription drug constitutes an unconstitutional delegation of legislative authority in violation of Idaho Constitution Art. 2, s 1, and Art. 3, s 1." *Id.* at 542, 568 P.2d at 515. This Court reversed and remanded, holding that the legislature properly designated the agency to effectuate its statutory policy and delineated the limits of the agency's powers in determining the prescription status of different drugs. *Id.* at 544–45, 568 P.2d at 517–18. In addition, the Court noted that to require the legislature to evaluate the need for prescription status for every new drug would have been an "impossible" task for the House and Senate. *Id.* at 544, 568 P.2d at 517. Accordingly, we concluded that "[d]elegation of the drug-by-drug evaluation is a necessary and proper exercise of legislative authority." *Id*. This Court then quoted the U.S. Supreme Court in restating:

> "The judicial approval accorded these 'broad' standards for administrative action is a reflection of the necessities of modern legislation dealing with complex economic and social problems. The legislative process would frequently bog down if Congress were constitutionally required to appraise beforehand the myriad situations to which it wishes a particular policy to be applied and to formulate specific rules for each situation. Necessity therefore fixes a point beyond which it is unreasonable and impracticable to compel Congress to prescribe detailed rules; it then becomes constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority. Private rights are protected by access to the courts to test the application of the policy in the light of these legislative declarations."

*Id.* at 544, 568 P.2d at 517 (quoting *American Power & Light Co. v. Securities & Exchange Comm'n*, 329 U.S. 90, 105 (1946) (internal citations omitted)).

Likewise, in *Kerner v. Johnson*, a case involving the actions of the American Falls Reservoir District, this Court considered a section of the Idaho Code that authorized "the board of directors of the constructing district to determine whether the public interest or necessity demands the replacement of a dam or related structure." 99 Idaho 433, 450, 583 P.2d 360, 377 (1978). After examining the statute, the Court concluded that it authorized the board's adoption of dam replacements and improvements "only when necessary, in the interest of the district or the public, 'to preserve, restore, protect and maintain rights of storage, diversion and delivery of water necessary and appurtenant to the purposes' for which the district was organized." *Id.* at

451, 583 P.2d at 378 (quoting I.C. § 43-2203). The statute did not grant "unbridled authority" to replace dams; the board's authority manifested only where those conditions laid out by the legislature were present. *Id.* 433, 451, 583 P.2d at 378. Thus, "the board [was] authorized to act only for a limited purpose in a limited manner after finding that certain conditions exist[ed]." *Id.* There was no unconstitutional delegation of lawmaking authority. *Id.*

Like in *Kerner* and *Kellogg*, IRIA places specific guidelines on the Department to evaluate the facts and conditions present in order for a tax credit to issue, and delineates the amount of tax credit it can issue. IRIA provides an application checklist under Idaho Code section 67-4739(1) and designates the Department and EAC to evaluate an applicant's compliance. This designated authority through IRIA is restricted because it consists only of approving or rejecting applicants based on the requisite conditions in section 67-4739(1). There is no unbridled authority to award tax credits; the EAC can only approve the issuance of a tax credit when all the statutory conditions are met, and it retains discretion to assure ongoing compliance with those requisite conditions. If the conditions are met, IRIA "authorizes the Department of Commerce to provide a business with a refundable tax credit for up to 15 years and up to 30% of the new revenue Idaho receives from the company's corporate income tax, payroll taxes, and sales and use tax attributable to a new project. I.C. § 67-4740." *Employers Res. Mgmt. Co. v. Ronk*, 162 Idaho at 776, 405 P.3d at 35.

Moreover, these conditions are equally applicable to every applicant. Each condition must be met for the applicant to receive a tax credit. The application requirements require each applicant to submit the same information as part of a standard evaluation process, including information on the project's economic benefits, proof of a community match, the number of jobs to be created, whether the applicant has good standing in the state of Idaho, tax revenue to be created by the project, services and goods to be purchased and utilized by the applicant, any known detriments to the state and existing industries, and so on. Any applicant—be it a new or existing business in any industry—can take advantage of IRIA's benefits as long as it "adds a minimum of 20 new full-time, non-seasonal jobs in rural areas (50 new jobs in urban areas) that pay an average wage that equals or exceeds the wage for the county where the business is located. I.C. § 67-4738(11), (12)." *Employers Res. Mgmt. Co.*, 162 Idaho at 776, 405 P.3d at 35. Once these minimum criteria are met, the Department monitors applicants' performance on an annual basis, with annual legislative oversight, I.C. § 67-4742, and can only issue a tax credit up

to 30 percent for 15 years. I.C. § 67-4740. With these provisions, the legislature provided the necessary guidelines and restrictions that bestowed a proper "fact-finding" status on the Department to ascertain the facts and conditions upon which IRIA becomes operative. The Director and EAC are "fact finding" on behalf of the legislature by ensuring applicants meet these criteria for a legislative-ordained tax credit. The process for collecting the facts and evaluating or weighing each fact is not laid out in the statute, but such detail is not required. It is "constitutionally sufficient if [the Legislature] clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Kellogg*, 98 Idaho at 544, 568 P.2d at 517 (quoting *American Power & Light Co.*, 329 U.S. at 105). After adoption of IRIA, the Department promulgated rules to guide the implementation and administration of IRIA. *See* IDAPA 28.04.01.001 through 28.04.01.220.

Therefore, we conclude that the fact-finding authority delegated to the Department and EAC by IRIA does not offend the principles of separation of powers enshrined in the Idaho Constitution. Accordingly, we affirm the district court's holding that the legislature properly delegated its authority to the Department of Commerce and EAC when it adopted IRIA.

### 2. IRIA does not limit judicial review.

Employers next argues that IRIA unconstitutionally limits judicial review in several ways: by (1) delegating judicial power to the EAC, (2) limiting judicial review of decisions by the Director and EAC "except for aggrieved applicants contesting the rejection of their application," (3) lacking any requirements for the EAC to make findings of fact for a reviewing court, and (4) barring aggrieved applicants' appeals from being considered "contested cases" under Idaho's Administrative Procedure Act ("APA"). Employers also notes that this Court previously raised concerns about limits on judicial review at oral argument during the previous appeal. While two justices did raise such questions during oral arguments, the Court explicitly restricted its decision to the question of standing: "We do not intend to express an opinion as to the merits of Employers' claim that IRIA is unconstitutional or that the district court should declare that the actions of the EAC are void." *Employers Res. Mgmt. Co.*, 162 Idaho at 781 n.3, 405 P.3d at 40 n.3. Following remand, the district court determined that the EAC's decisions are final and appealable because IRIA provides for aggrieved applicants and competitors to seek judicial review through the APA or a declaratory judgment action. This decision is correct.

Importantly, although we previously determined that Employers has *competitor standing* to challenge an agency action under IRIA, this appeal does not actually present a challenge to a specific action taken by the Department. Rather, Employers has focused solely on the constitutionality of IRIA itself. Additionally, because Employers is not an aggrieved *applicant*, it lacks standing to assert rights that are only applicable to an aggrieved applicant.

> It is a fundamental principle of constitutional law that a person can be heard to question the constitutionality of a statute only when and insofar as it is being, or about to be, *applied to his disadvantage*. It follows "that one may not urge the unconstitutionality of a statute who is not harmfully affected by the particular feature of the statute alleged to be in conflict with the constitution."

*State v. Heitz*, 72 Idaho 107, 114, 238 P.2d 439, 443 (1951) (emphasis added) (quoting *Tooz v. State*, 76 N.D. 599, 607, 38 N.W.2d 285, 290 (1949)). Thus, we will only address Employers' constitutional arguments concerning judicial review that pertain to its status as a competitor.

The Idaho Constitution states that "[t]he legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it." Idaho Const. art. V, § 13. Nevertheless, "[t]his Court has consistently recognized that Article V, Section 13 of the Idaho Constitution empowers the Legislature of this state to enact procedural rules when such rules are necessary because of changing times or circumstances or the absence of a rule from this Court." *In re SRBA Case No. 39576*, 128 Idaho 246, 254, 912 P.2d 614, 622 (1995).

The only provision in IRIA addressing judicial review is in section 67-4739(2) of the Idaho Code, which states:

> An approval or rejection from the council shall not be considered a contested case pursuant to chapter 52, title 67, Idaho Code; provided, however, that nothing in this section shall prohibit an aggrieved *applicant* from seeking judicial review as provided in chapter 52, title 67, Idaho Code.

(Emphasis added). This language directs an aggrieved applicant to the judicial review provisions of the APA, which provides: "A person aggrieved by final agency action other than an order in a contested case is entitled to judicial review under this chapter if the person complies with the requirements of sections 67-5271 through 67-5279, Idaho Code." I.C § 67-5270(2).

Employers' arguments that it has been denied an opportunity for judicial review as a competitor are unfounded, as the action of bringing this declaratory judgment plainly manifests. While there may not be an appeals process within IRIA to review a final decision regarding a competitor, the legislature has expressly provided an avenue for judicial review through the APA. The statutory language "shall not be considered a contested case" is simply a classification

of the case for different judicial review procedures pursuant to Idaho Code section 67-5270(2). In other words, although a non-applicant is barred from seeking judicial review pursuant to the APA, they are not barred from filing a declaratory judgment action. *See* I.C. §§ 67-5272, 5278. Indeed, this Court previously held in the earlier appeal of this case that competitors with standing can challenge IRIA and EAC decisions outside the APA.

Employers next contends that the EAC's decisions are unreviewable and unsupported by a factual record, but this is also incorrect. Factual findings and a record will be created from the Director's report and findings concerning each application, and should include the final decision of the EAC. The legislative requirements and Department's evaluation procedures ensure that there will be sufficient records and information for the EAC to make a decision that a court may review later, if necessary. Ultimately, the Director is still required by statute to make a submission of each application to the EAC for review alongside the Director's recommendation. I.C. § 67-4739(2). In addition, the legislature included oversight requirements with annual reporting and auditing requirements in section 67-4742, which will add to the record aggrieved applicants and competitors can challenge in court. Indeed, Employers has not argued below or on appeal that the agency record was insufficient to bring their declaratory judgment action. Accordingly, we affirm the district court's holding that IRIA does not improperly limit judicial review.

### B. Employers is not entitled to attorney fees.

Employers contends that it is entitled to attorney fees pursuant to section 12-117(1) of the Idaho Code; however, that provision only authorizes an award of fees to the prevailing party. Because Employers has not prevailed in this case, it is not entitled to attorney fees.

### IV. CONCLUSION

For the foregoing reasons we affirm the judgment of the district court. Costs to the Department.


Chief Justice BURDICK, and Justices BRODY, BEVAN and STEGNER **CONCUR.**

11