

**Decided April 24, 1985**

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

| | |
|---|---|
| PABLITO AMOG, et al., ) | CIVIL ACTION NO. 35-149 |
| Plaintiffs, ) | |
| vs. ) | ORDER RE: |
| | MOTION FOR PARTIAL SUMMARY |
| RICHARD J. KEATLEY, as Chief ) | JUDGMENT AND JUDGMENT |
| of Immigration and Naturalization) | ON THE PLEADINGS |
| Office, ) | |
| Defendant. ) | |

The defendant has moved for judgment on the pleadings while the plaintiffs have moved for summary judgment. Both motions revolve around and concern the decision by the Appellate Division of the District Court in Sirilan v Castro, DCA No: 83-9009, CTC No. 82-139 (1984).

In order to properly understand this matter as it is now presented to the court by the cross-motions, a brief procedural history is required. Most of this history is set forth in the trial and appellate decisions in Sirilan v Castro, supra.

156

## PROCEDURAL HISTORY

In 1977 the legislature of the Northern Mariana Islands enacted Public Law 5-11 which provided that aliens could obtain permanent residency status in the Northern Mariana Islands if they met certain qualifications (including residing in the Northern Mariana Islands for five years) and complied with certain procedures. Once an alien acquired permanent residence status, he or she was relieved of certain burdens such as annual registration and acquired the right to remain in the Northern Mariana Islands.

On April 23, 1981, the legislature passed House Bill 158 which was signed into law the same day as Public Law 2-17 by the Governor. The purported effect of Public Law 2-17 was to repeal Public Law 5-11 and terminate the opportunity for aliens to apply for permanent residency status. The law did preserve the rights of those aliens who had already acquired said status and it further provided that those aliens who had applied by April 23, 1981 would have their applications processed in the normal manner.

Sirilan and others brought suit against the government asserting that Public Law 2-17 was unconstitutional as being in violation of the due process and equal protection clauses of the Commonwealth Constitution. The plaintiffs were a group of aliens who, assertedly, could qualify for permanent

residency status under Public Law 5-11 but had not formally filed their applications at the time Public Law 2-17 became effective.

After Sirilan filed a motion for summary judgment, the Commonwealth Trial Court, on April 11, 1983, held that Public Law 5-11 did not give the plaintiffs a vested right to permanent residency status and that it did not violate the due process clause nor the equal protection clause.

Shortly thereafter, the government filed a motion for summary judgment and since the April 11, 1983 order resolved the issues, argument was waived and on May 9, 1983 the court granted summary judgment for the government.

Sirilan appealed to the Appellate Division of the District Court and on October 24, 1984 the appellate court reversed the trial court on equal protection grounds though it found that the plaintiffs had no vested right to permanent residency status and there was no due process violation in the enactment of Public Law 5-11.

It is the wording of the appellate decision which has spawned this litigation and which now presents this court with the task of interpreting the opinion and applying the effect of the appellate decision.

The plaintiffs and defendant take opposite courses on the meaning and effect of the decision. Succinctly stated, the plaintiffs argue that the appellate court declared Public Law 2-17 unconstitutional and therefore Public Law 5-11 is still in effect and they should be allowed to apply for permanent residency status. The defendant argues that the appellate court's decision is *stare decisis* and resolves this lawsuit adversely to the plaintiffs. At argument it was stated that the appellate court meant that the entire act (Public Law 2-17) is not unconstitutional except as to a particular class and/or the act is constitutional with a small exception.

## DISCUSSION

A review of the appellate opinion in *Sirilan v Castro*, supra, reveals that three issues on appeal were presented to the appellate court:

1. Whether Public Law 5-11 created in him (Sirilan) a vested right to be granted permanent residency status.

2. Whether Public Law 2-17 violates principles of due process.

3. Whether Public Law 2-17 transcends guarantees of equal protection.

Slip Opinion, page 5.

159

As noted above, the first two issues were resolved against the plaintiffs and the trial court was affirmed on those issues.

The third issue of equal protection was discussed at length and the holding is set forth as follows:

"VII

We hold today that legislation which discriminates among non-citizens or which infringes upon important individual interests will survive constitutional review only upon a convincing, well supported showing that the classification substantially serves to achieve important government interests. The line drawn in P.L. 2-17 has not been persuavely shown to so serve. Therefore, the decision granting summary judgment to the Commonwealth was in error. To now allow the government the opportunity on remand to reassert justifications of the classification would unacceptably encourage attempted retroactive rationalizations which would amount to nothing more than afterthought. Accordingly, we hold that the provisions of Section 2 of P.L. 2-17 prohibiting those non-citizens who qualified for permanent residency status on April 23, 1981 to so prove creates unconstitutional classifications and must fail. The trial court's decision denying Sirilan's Motion for Summary Judgment is in error."

Slip opinion, pp. 46-47.

It is clear that the Appellate Division of the District Court had jurisdiction to decide the constitutionality of Public Law 2-17. 1 CMC 3301; 48 U.S.C. § 1694b. As such, it has the power of judicial review and to test the validity

160

of the statute. 5 AmJur 2d, Appeal and Error, § 873;
20 AmJur 2d, Courts, § 16.

This judicial power entails the determination of whether
a statute transcends the limits imposed by the Federal
and/or Commonwealth Constitutions and to determine whether
such statute is or is not constitutional. It is within the
province of the appellate court to say what the law is and
it can vitiate unconstitutional legislation.

16 AmJur 2d, Constitutional Law, § 150, et seq.

Constitutional principles of separation of powers limit
the remedial methods that can be employed by the courts to
review legislative action. The function of the courts is
confined to deciding questions of law and not questions of
policy. To this end, courts may decide only whether a given
legislative enactment is valid or not. They may not substitute
their independent judgment as to what the law should be for
that of the responsible legislative body. Sutherland,
Statutory Construction, 4th Ed., § 2.05.

What is clear without question is when a court strikes
down a statute or a portion thereof as unconstitutional,
that statute or portion thereof is not a law and has no
//
//

161

effect and is void.[1] Chicago I & L.R. Co. v Hackett, 228 U.S.
559, 33 S.Ct. 581, 57 L.Ed. 966; Huntington v Worthen, 120 U.S.
97, 7 S.Ct. 469, 30 L.Ed. 588; Nortonv Shelby County, 118 U.S.
425, 6 S.Ct. 1121, 30 L.Ed. 178; Ex parte Siebold, 100 U.S. 371,
25 L.Ed. 717.

 A decision holding a statutory provision invalid has
the effect of reactivating a prior statute which the invalid
act had displaced.

Boeing Co. v State, 442 P.2d 970 (Wash. 1968);

Stewart v Waller, 404 F.Supp. 206 (ND Miss 1975);

Sutherland, supra, § 2.07, F.N. 15.

With these basic and elementary principles in mind, it
must be determined what the appellate court did in its
October, 1984 ruling. The so-called bottom line (literally
and figuratively) is that:

"The decision of the trial court regarding the motions
for summary judgment are REVERSED." Slip Opinion, p. 48.[2]

---

[1] In certain cases the principle of estoppel by judgment
has been utilized where the parties rely on a statute, later
declared invalid. Sutherland, supra, § 2.07. Thus "interim"
effect is given to the statute. Public Law 2-17 does not present
a situation for the application of the principle.

[2] Although the opinion states an unqualified reversal of
the trial court's rulings on the cross motions for summary
judgment, it is gleaned from the opinion itself that the rulings
on the vested right and due process issues were affirmed. It was
apparent at argument on the motions now being considered by the
court that counsel for both the plaintiffs and defendant interpreted
the opinion in a like manner. Thus, only the ruling on the equal
protection issue is addressed herein as, in actuality, that is the
only ground upon which the appellate court reversed the trial court.

The trial court's ruling on the summary judgment motions and the effect of the reversal by the appellate court were as follows:

1. Plaintiff's (Sirilan) motion for partial summary judgment was denied on April 11, 1983. This motion, filed on February 25, 1983, requested the trial court, <u>inter alia</u>, to declare Public Law 2-17 in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. Thus the ruling of the appellate court is clear. It held, that Public Law 2-17 violated the equal protection clause of the Fourteenth Amendment.

2. On May 9, 1983 the trial court granted defendant's motion for summary judgment which sustained Public Law 2-17 against all attacks including the equal protection one. Thus, once again, the reversal of this ruling held that Public Law 2-17 violated the equal protection clause of the Fourteenth Amendment of the U. S. Constitution.

The above would seem to simply resolve this matter but the above quoted portion of Part VII of the opinion (see page 5, supra) creates conflicting versions of what was

actually meant by the appellate court. Specifically, on page 47, lines 5 thru 9, the appellate court stated that "...the provisions of Section 2 of Public Law 2-17 prohibiting those non-citizens who qualified for permanent residency status on April 23, 1981 to so prove creates unconstitutional classifications and must fail."

Two obvious problems are immediately apparent from the above.

First, there are no provisions in Section 2 of Public Law 2-17 which prohibit non-citizens from applying for permanent residency status.[3] Section 2 serves the admirable and

---

[3] The full text of Section 2 of Public Law 2-17 follows:

Section 2. Reservation of Right and Status.

(a) The provisions of this Act shall not repeal, amend, deny abrogate or otherwise affect the rights and status of any person granted permanent residency status pursuant to Public Law 5-11 prior to the effective date of this Act.

(b) The provisions of this Act shall not repeal, amend, deny abrogate or otherwise affect the rights and status of any person who has filed an application for permanent residency status pursuant to Public Law No. 5-11 prior to the effective date of this Act. All persons who have duly filed for permanent residency status prior to such date shall have their applications processed and determined in accordance with the rules, regulations and administrative procedures adopted pursuant to Public Law No. 5-11.

164

beneficial purpose of preserving the rights of: (1) those persons already granted permanent residency status; and (2) those persons who had filed an application for said status prior to the repeal of Public Law 5-11.

Thus, should the intent of the appellate court be to declare all or any part of Section 2 of Public Law 2-17 unconstitutional, it would destroy the very substantial rights of other persons not even parties to the lawsuit of Sirilan v Castro. It cannot be concluded that this is the result the appellate court intended. Certainly, it was the clear intent of the legislature to preserve the rights of those who had already attained permanent residency status or who had applied for it.[4]

Second, the above quoted portion of the opinion suggests a ruling of the partial unconstitutionality of Public Law 2-17. But which part? This raises the principle of separability. See, Sutherland, supra, Chapter 44.

As pointed out by the government in its brief in opposition to plaintiffs' motion, a cardinal principle of statutory construction is to save and not destroy. Thus, the general rule can be stated to be that a statute may be constitutional

---

[4] See, Report of the Committee on Judiciary and Governmental Operations on House Bill 158, dated 27 January, 1981 at page 2-3.

in one part and unconstitutional in another and that if the invalid part is severable from the rest, the portion which is constitutional may stand while that which is unconstitutional is "stricken out" and rejected.

Chaplinsky v New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031;

Lynch v United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434;

Champlin Refinery Co. v Corp. Comm. Okla., 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062;

Utah Power & Light Co. v Pfost, 286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038;

Weller v New York, 268 U.S. 319, 45 S.Ct. 556, 69 L.Ed. 978;

Field v Clark, 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294.

Where it is not possible to separate that part of the act which is unconstitutional from the rest of the act, the whole statute falls.

Lynch v United States, supra;

Hill v Wallace, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822;

McFarland v American Sugar Refining Co., 241 U.S. 79, 36 S.Ct. 498, 60 L. Ed. 899;

Harrison v St. Louis & S.F.RY. Co., 232 U.S. 318, 34 S. Ct. 333, 58 L.Ed. 621.

Many courts addressing the principle of separability look to and base their decision not only on the above rules but also on the existence in the particular statute of a savings clause, which contains wording expressing legislative intent that should one part of the law be declared invalid the remaining portions shall remain in effect.

16 AmJur 2d, Constitutional Law, § 266. Sutherland, supra, § 44.08.

There is no such provision within Public Law 2-17.

It is also a familiar rule that if parts of the law are divisible (even without a savings clause) and a portion is to be stricken as invalid, the whole law will be declared invalid if it appears the legislature would not have adopted it without the stricken parts.

Champlin Refining Co. v Corp. Comm. of Okla., supra;
Dorchy v Kansas, 264 U.S. 286, 44 S.Ct. 323,
68 L.Ed. 686;
Employers Liability Cases, 207 U.S. 463, 28 S.Ct. 141
52 L.Ed. 297;
Packet Co. v Keokuk, 95 U.S. 80, 24 L.Ed. 377;
Sutherland, supra, § 44.03.

Since it has already been concluded that the appellate court could not have intended to strike down or delete

167

Section 2 of Public Law 2-17 and the reference to that section must have been in error, the question still remains what part must have been declared unconstitutional by the appellate court. Public Law 2-17 only has three other sections, the repealer of Public Law 5-11 (Section 1), a section relating to other laws (Section 3) and the effective date (Section 4).

It becomes abundantly clear at this juncture that Public Law 2-17 is just not susceptible to the traditional severability alternative the courts can utilize to strike down only the offensive portions. Indeed, it is clear that the appellate court did not specify any words, paragraphs or sections to be stricken.[5]

---

5
 The confusion created by the appellate court decision stems from the posture of the Sirilan case as it went up on appeal. It is beyond doubt that the plaintiffs, defendant and trial court were in accord as to the scope of the plaintiffs' claim of unconstitutionality of Public Law 2-17. Not only was the original complaint, amended complaint and answer addressed to the issue of the constitutionality of Public Law 2-17 as a whole, but the effect of any ruling by the trial court was stated early in the litigation. After the plaintiffs moved to have a class certified, the trial court denied the motion and stated:

> Defendants have stipulated that if plaintiffs are successful in their attempt to have Public Law 2-17 declared unconstitutional by this court through the instant action, and furthermore, if plaintiffs are successful in their attempt to have this court require defendant Castro to continue to accept and process applications for

permanent residence in accordance with the
Public Law 5-11, by this action, then the
CNMI Government will accept and process other
applications for permanent residence in
accordance with Public Law 5-11 pursuant to
the Doctrine of Stare Decisis.

(Order dated 3 September, 1982)

The subsequent motions for summary judgment and rulings
thereon were all made with the same thought in mind. Either
Public Law 2-17 was constitutional or not. No suggestion or
argument was made as to separability or to exclude the
application of Public Law 2-17 just to the plaintiffs in
Civil Action No. 82-139. And, of course, the issue of total
constitutionality or unconstitutionality was the way the
matter was presented on appeal. Except for the last seven
lines on page 47 of the appellate opinion, there is no doubt
the appellate court struck down Public Law 2-17 in its
entirety. Those seven lines read:

"We remand to the trial court to conduct
further proceedings wherein the non-citizens
who met the substantive qualifications for
permanent residency status on April 23, 1981
be given a fair opportunity and reasonable time
to complete and file their applications with
the INO. This classification strikes a
constitutionally permissible balance between
the public interests advanced by the Commonwealth
and the rights asserted by Sirilan."

The "remand" of the appellate court was the result of
affidavits filed by the plaintiffs in Sirilan.

All of the plaintiffs filing affidavits completed the
five-year residency requirement at least one year prior to
the effective date of Public Law 2-17 and in most cases two
or more years. House Bill 158, which became Public Law 2-17, was
first introduced in the House of Representatives July 29,
1980, nine months before it became law. What troubled the
appellate court were certain assertions in the affidavits of
some of the plaintiffs which "had potential for invidious

discrimination" (slip op. p. 44). Federico Acera stated that though he qualified in 1977, he was prevented from submitting an application for permanent residency because the Mayor of Saipan refused to give him a certificate of moral character. Wenifredo O. Buenaflor said he was waiting for a certificate of moral character from the Mayor. No date is given when he applied for the certificate although he completed the five year residency six and a half months before Public Law 2-17 became effective. Luz Buccat became eligible in 1977 but states that she was awaiting documentation when Public Law 2-17 became effective. Demetrio Tupas became eligible in 1976 and stated he was told by the INO office in 1979 that as a contract worker he did not qualify. (See slip opinion, p. 44 and respective affidavits in Sirilan). The appellate court treated these assertions as evidence (slip op. pg 44, line 3). It must be noted again that plaintiffs' motion for partial summary judgment was addressed strictly to the constitutionality of Public Law 2-17 and no factual issues were asserted by either the plaintiff or the government. Thus, the affidavits were of no moment in considering the motion for summary judgment as it was not a "speaking motion." In fact, the complaint is devoid of any allegations charging the Mayor or INO offices of delay, misconduct, misrepresentation, or abuse of their official positions. Even if the affidavits were to be given consideration they all fail to comply with Rule 56, Com.R.Civ.P. 56(e).

It is clear that the constitutionality of the statute can be tested by the summary judgment procedure where there is no genuine issue of fact. But, where there is a genuine issue of fact, the summary judgment procedure cannot be used to decide the constitutionality of a statute. Pacific American Fisheries Inc. v Mullaney, (CA 9 Alaska) 191 F.2d 137; 83 ALR 2d 840 § 4; 16 AmJur 2d, Constitutional Law, § 186.

■ The government argues that the court need only look to the remand directions on page 47 of the opinion which indicates that all is meant by the decision is to open the permanent residency gates to the plaintiffs and no one else. In articulating this position at argument and in a supplemental brief it is stated that the repealer was ineffective to only the plaintiffs and not to all others. Put another way, it was argued that Public Law 2-17 is unconstitutional as to its application to a certain class of people, the plaintiffs. And further, the entire act is not unconstitutional - except as to a particular class or that Public Law 2-17 is constitutional with a small exception.

Thus the government urges this court to interpret the appellate court decision as utilizing another alternative to uphold Public Law 2-17. This alternative is provided in Public Law 3-90 which provides in pertinent part:

> "Section 16. Severability.
> If any of the provisions of this Code, or the application thereof to any person or circumstance, is held invalid, that invalidity shall not affect any other provision or application of this Code which can be given effect without the invalid provision or application, and to this end the provisions of this Code are severable."

Public Law 2-17 was codified as 3 CMC 4201 et seq and took effect January 1, 1984. The government argues that this severability section is therefore applicable and thus

allows the interpretation of the appellate opinion which the government urges.

Section 16 of Public Law 3-90 is an expansion of the standard severability clause found in many statutes. Of importance in resolving this matter is the wording concerning the invalid _application_ of a law. The section is tailor-made for the situation presented in _Sirilan v Castro_. Is it applicable to that case even though the appellate court did not refer to Public Law 3-90? It is concluded that it is. 3 CMC 4201 (Public Law 2-17) was enacted into the new Code at the same time as Public Law 3-90 and it is concluded the intent of the legislature was to have § 16 of Public Law 3-90 apply to all code provisions.

This court is convinced that if the legislature had known of the unconstitutional application of Public Law 2-17 to the plaintiffs, it would certainly want the statute applied to all the rest of the non-citizens who had not completed the five year residency requirement by April 23, 1981.[6]

---

[6] In support of the theory that a court can find a statute invalid in some but not all of its applications, the government has cited _Sutherland_ at § 44.14 et seq and a 1937 Harvard Law Review article. After a searching review of Sutherland and the law review article, the broad application of the theory the government espouses is not evident.

However, the court is convinced that had the legislature known of the invalid application of Public Law 2-17 to the plaintiffs, it would certainly want the repealer to cut off all future permanent residency applications. In view of the severability section in Public Law 3-90 which does set forth in statutory form the partial application alternative for a court, this court interprets the appellate court's decision as doing just that.

Thus, it is concluded that Sirilan v Castro must be interpreted to mean that Public Law 2-17 was unconstitutional only in its application to the plaintiffs in that case and other than that, the repeal of Public Law 5-11 is effective. None of the plaintiffs in this case are affected by Sirilan and as to them the permanent residency status and privilege of applying therefor was terminated April 23, 1981.

Judgment on the pleadings is granted the defendants and summary judgment for the plaintiffs is denied.

Dated at Saipan, CM, this 24th day of April, 1985.

_____
Robert A. Hefner, Chief Judge