**NATIONAL TANK TRUCK CARRIERS, Plaintiff,**

v.

**Drew LEWIS, et al., Defendants.**

**Civ. A. No. 82–718.**

United States District Court, District of Columbia.

Oct. 27, 1982.

1–105 and which does not consider the issue of the chosen forum's relation to the parties' agreement.

Lawrence W. Bierlein, Washington, D.C., for plaintiff.

Barbara S. Woodall, U.S. Dept. of Justice, Civil Div., Cleveland Thornton, U.S. Dept. of Transp., Washington, D.C., for defendants.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge.

In this action, the plaintiff, National Tank Truck Carriers, Inc. (NTTC), seeks to invalidate a rule promulgated by the Secretary of the Department of Transportation (Secretary) governing the level of insurance to be purchased by motor carriers of gasoline. Specifically, NTTC seeks the imposition of a rule requiring that carriers of gasoline purchase the higher of two statutorily prescribed levels of insurance, rather than the lower level mandated by the Secretary's current rule. The case is now before the Court on the Secretary's motion to dismiss for lack of standing.

### Background

Section 30(b) of the Motor Carrier Act of 1980 (MCA), P.L. 96–296, reported as an amendment to 49 U.S.C. § 10927 (Supp. IV 1980), requires the Secretary to establish "minimal levels of financial responsibility" —i.e. minimum insurance levels—for motor carriers carrying certain hazardous substances. The section sets forth two levels:

Under subsection (b)(2) a minimal level of $5,000,000 is required for items on a list of extraordinarily hazardous substances, while under subsection (b)(3) a lesser minimal level of $1,000,000 is required for any hazardous "material, oil, substance, or waste not subject to the provisions" of subsection (b)(2).

Pursuant to the statute's command, the Secretary promulgated a rule, 49 C.F.R. § 387.9, establishing the two-tiered insurance requirements. He also defined with particularity, by referring to other Department of Transportation regulations, the items requiring the higher level of insurance under subsection (b)(2). Gasoline was not among the items requiring the higher insurance level. NTTC challenges the Secretary's decision to require the lower level of insurance, $1,000,000, rather than $5,000,-000, for the carriers of gasoline.

The key issue in the present motion is whether the imposition of the lower level of insurance will inflict upon NTTC and its members injury of a sort sufficient to confer standing to challenge the Secretary's regulation. In its amended complaint, NTTC outlined five forms of injury that it and its members will suffer. First, NTTC contends that the lower level of insurance will foster a poor safety record in the carrier industry, ultimately leading to higher insurance rates for all carriers, including NTTC's members. Second, because the lower level is inadequately low, the carriers who choose to insure at that level will be unable to adequately compensate potential victims in case of accident. That inability to adequately compensate will harm the reputation of all carriers in the industry, including NTTC's members, and, third, will eventually lead to a backlash of increased regulation burdening all carriers, including NTTC's members. Fourth, since NTTC's members share common loading racks, unloading facilities, roads, etc., with the minimally insured carriers, it is especially likely that NTTC's member-carriers will be the inadequately compensated victims in case of accident. Fifth, a lower level of insurance, by decreasing the cost of business, will increase competition, forcing NTTC's mem-

bers to cut profits or insure at the lower level which NTTC feels is inadequate.

The Secretary has moved to dismiss for lack of subject matter jurisdiction, asserting that none of the injuries alleged is sufficient to confer upon NTTC standing to sue. The Court grants the Secretary's motion.

### Analysis

A succinct definition of the concept of standing has eluded the many courts that have wrestled with the problem over the years. Recently, the Supreme Court in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), reviewed its prior cases, and enunciated the standards that are to guide the courts in resolving future challenges to standing. Those standards emanate from two distinct sources: from the "case and controversy" requirement of Article III of the U.S. Constitution, and from judicially formulated prudential considerations.

The constitutionally mandated component of standing was summarized in *Valley Forge* as follows:

> [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979), and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450 (1976).

*Valley Forge,* 102 S.Ct. at 758.

■ Beyond these three constitutional requirements of actual or threatened injury, traceable injury, and redressability, there exist the two prudential requirements imposed not by the constitution but by the

courts. First, the plaintiff must assert his own legal rights, not those of a third party, *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), and, second, the plaintiff's claim must fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). *See Valley Forge,* 102 S.Ct. at 760.

Of the five types of injury alleged by NTTC, none avoids the pitfalls that confront a plaintiff attempting to show standing. They all fail to meet at least one of the constitution's three requirements.

■ At the outset it should be stressed that NTTC does not claim that it has already suffered injury; it claims that the lower level of insurance may result in injury at some future time. However, for future injury to confer standing, "[i]t must be alleged that the plaintiff . . . is immediately in danger" of the threatened injury. *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). The injury must be "real and immediate", not "conjectural". *Goldon v. Zwickler,* 394 U.S. 103, 109, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969). *See Metcalf v. National Petroleum Council,* 553 F.2d 176, 186–87 (D.C.Cir.1977).

■ All the injuries alleged by NTTC are "conjectural", not "real and immediate". NTTC claims that a lower insurance level will foster a poor safety record for the industry, ultimately increasing the price that everyone in the industry will have to pay for insurance premiums. However, "[t]he occurrence or extent of any price rise cannot be determined at this point." *Metcalf,* 553 F.2d at 186–87 (footnote omitted). It is impossible to ascertain the likelihood of NTTC's prediction that $5,000,000 in insurance coverage will encourage a safety record capable of containing the price of insurance, while $1,000,000 will not. The fact that NTTC's members "cannot specify *in any way* the monetary losses associated with" the lower insurance level "detracts greatly from the strength of their standing

argument." *Id.* at 186 n. 109 (emphasis in original).

Similarly, NTTC's claim that its members would suffer from under-compensation if involved in an accident with a minimally insured carrier is equally speculative and conjectural. *Cf. Duke Power Co. v. Carolina Study Group, Inc.,* 438 U.S. 59, 73, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978) (leaving open the question of whether the threat of under-compensation constituted injury sufficient to confer standing on plaintiffs if injured in an accident involving a statutorily insured nuclear power plant). There exists pervasive "uncertainty about whether the alleged injury will be likely to occur." *Metcalf,* 553 F.2d at 187 (footnote omitted), *quoting O'Shea v. Littleton,* 414 U.S. at 498, 94 S.Ct. 677. Though it can be argued that accidents involving gasoline carriers are more likely than not, it is by no means certain that accidents will necessarily include instances of minimally insured carriers inflicting injury upon NTTC's members. *See Metcalf,* 553 F.2d at 187.

A similar argument can be made with regard to NTTC's claim of potential damage to reputation. It is not at all clear or certain to this Court that $5,000,000 of coverage will preserve NTTC's reputation, while $1,000,000 will not. Furthermore, nothing bars NTTC's members from maintaining a level of insurance higher than the Secretary's minimum if they believe that a higher rate will protect their reputation. NTTC's contention that inadequate coverage of other carriers will harm NTTC's reputation is recognizably speculative. Standing cannot be granted to a plaintiff merely "because *some* harm [is] likely to occur and it *might* affect the litigant personally." *Federation for Immigration Reform v. Klutznick,* 486 F.Supp. 564, 571 (D.D.C.1980) (emphasis in original).

Next, NTTC claims that permitting carriers to secure coverage at the lower level of insurance will eventually lead to over-regulation of all the carriers in the industry, including NTTC's members. This claim is based upon a number of sequence of questionable assumptions. NTTC assumes that

accidents will occur involving damage greater than the lower level of $1,000,000, leading to inadequate compensation of victims. It next assumes that inadequate compensation will lead to a public outcry directed at all carriers, even NTTC's members, despite the fact that NTTC's carriers carry the higher level of insurance. NTTC then further assumes that the result of the outcry will be the imposition of regulations on all carriers, including the adequately insured members of NTTC. Finally, these future regulations will take the form of disruptive state and local ordinances, burdening NTTC's members with standards "above and beyond the standards of conduct that may be self-imposed by motor carriers." Plaintiff's First Amended Complaint (filed October 1, 1982) at 1.

The mere outline of this aspect of NTTC's claim suggests its conjectural quality. Possibilities other than those described by NTTC are equally possible. There may not occur enough accidents involving damage greater than $1,000,000 to stimulate the feared backlash. Or, the backlash may serve to impose a $5,000,000 level of insurance, the very sort of relief requested here by NTTC. Finally, it is a dubious proposition that the burden of future regulation can satisfy the "threatened injury" requirement.

NTTC's best claim is that of competitor standing.[1] The general rule is that a competitor has standing to challenge future loss of profits. "It is well-established that threatened economic injury produced by unlawful competition raises a justifiable controversy and that a trade association has standing to challenge such action on behalf of its members." *United States League of Saving Ass'ns v. Board of Governors of the Federal Reserve System,* 463 F.Supp. 342, 349 (D.D.C.1978) (footnote omitted). That proposition was established by the Supreme Court in *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Arnold Tours v. Camp,* 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970); and *Investment Company Institute v. Camp,* 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971). In those three cases the Supreme Court held that a plaintiff could challenge rulings of the Comptroller of Currency allowing national banks to enter into and compete in the plaintiffs' fields.

■ However, on the facts presented here, the competitor standing articulated in the *Camp* cases would be inapplicable. NTTC alleges that if it attempts to maintain the higher level of protection by continuing its higher level of insurance, it will be faced with severe competition from operators insuring at the lower level. The difficulty with this position is that, unlike the challenges in the three *Camp* cases, a successful challenge to the Secretary's rule in this case will not absolutely bar competitors from entering into NTTC's market. Rather, it will serve merely to increase the costs associated with entry into that market, by increasing the required level of insurance coverage. But it is only when a successful challenge will set up an absolute bar to competition, not merely an additional hurdle, that competitor standing exists. *See American Society of Travel Agents, Inc. v. Blumenthal,* 566 F.2d 145, 151 (D.C.Cir. 1977), *cert. denied,* 435 U.S. 947, 98 S.Ct. 1533, 55 L.Ed.2d 546 (1978).

■ In *American Society of Travel Agents,* travel agents challenged an Internal Revenue Service rule which accorded tax-exempt treatment to profits earned by the American Jewish Congress from its tour operations. The travel agents alleged competitor standing, claiming that the tax exemption gave the American Jewish Congress an unfair competitive advantage. The Court held that the plaintiffs lacked adequate injury to meet the Article III test

---

1. Defendants claim, in their Memorandum in Support of Defendants' Motion to Dismiss the Amended Complaint (filed October 5, 1982) at 2, that plaintiff has abandoned this argument. The Court does not agree. Though inartfully worded, plaintiff's First Amended Complaint at 11 reiterates the claim of competitor standing.

of standing,[2] and distinguished the standing alleged by the travel agents from the competitor standing in the *Camp* cases. In the *Camp* cases the plaintiffs' challenges, if successful, would have served as an absolute bar, preventing the competitors' entry into their field altogether, while in *American Society of Travel Agents* the American Jewish Congress "and other such groups will clearly remain free to pursue their travel business however the tax status is finally resolved." *Id.* at 151. Similarly here, NTTC's competitors will remain free to pursue their trucking business, however the insurance controversy is resolved.

In addition, NTTC has not named as defendant any carrier that will compete more effectively against NTTC's members as a result of the lower level of insurance. It may well have been a crucial component of competitor standing in the *Camp* cases that the plaintiffs there were able to single out and name as defendants the competitors who would benefit from the challenged regulation. *See Id.* at 151 n. 5.

The various injuries alleged by NTTC also present difficulties with the prudential component of standing. However, the Court need not address those issues in light of the inability of NTTC to satisfy the constitutional requirements.

Based on the foregoing, the defendants' motion to dismiss should be granted.

---

**2.** *But see Tax Analysts and Advocates v. Blumenthal,* 566 F.2d 130 (D.C.Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978), a companion case, where another panel of the D.C. Circuit, on similar facts, ruled that the injury suffered *did* meet the Article III test of standing, *id.* at 138, but not the prudential "zone-of-interests" test. *Id.* at 143.