## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 44511

| | | |
|---|---|---|
| EMPLOYERS RESOURCE MANAGEMENT COMPANY, an Idaho Corporation, | ) ) ) ) | Boise, August 2017 Term |
| Plaintiff-Appellant, | ) ) | 2017 Opinion No. 108 |
| v. | ) ) | Filed: November 3, 2017 |
| | ) ) | Karel A. Lehrman, Clerk |
| MEGAN RONK, in her capacity as Director of the Idaho Department of Commerce, | ) ) ) | |
| Defendant-Respondent. | ) ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Samuel Hoagland, District Judge.

The judgment of the district court is <u>vacated</u> and <u>remanded for further proceedings.</u>

Eberle, Berlin, Kading, Turnbow & McKlveen, Chartered, Boise, for appellant. Neil D. McFeeley argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Carl J. Withroe argued.

_____

HORTON, Justice.

This is an appeal from the district court's dismissal of Employers Resource Management Company's ("Employers") complaint for declaratory relief for lack of standing. We reverse and remand for further proceedings.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In 2014, the Idaho Legislature passed the Idaho Reimbursement Incentive Act ("IRIA"). IRIA is intended to create incentives for businesses to move to Idaho or to significantly increase their workforces by way of a subsidy in the form of a refundable tax credit. IRIA authorizes the Department of Commerce to provide a business with a refundable tax credit for up to 15 years and up to 30% of the new revenue Idaho receives from the company's corporate income tax,

payroll taxes, and sales and use tax attributable to a new project. I.C. § 67-4740. The benefits of IRIA are available to both new and existing businesses in any industry with a competitive project that adds a minimum of 20 new full-time, non-seasonal jobs in rural areas (50 new jobs in urban areas) that pay an average wage that equals or exceeds the wage for the county where the business is located. I.C. § 67-4738(11), (12).

A business seeking the credit must apply to the Director of the Idaho Department of Commerce ("the Director"). I.C. § 67-4739. Among the requirements that the applicant must satisfy is "proof of a community match." I.C. § 67-4739(l)(c). The applicable local government unit must demonstrate "active support of the applicant," which may include "a contribution of money, fee waivers, in-kind services, the provision of infrastructure, or a combination thereof." I.C. § 67-4738(5).

The Director conducts a technical review and economic impact analysis of each application. IDAPA 28.04.01.151.07. After the Director determines that the application meets the requirements of IRIA, the application is forwarded to the Economic Advisory Council ("the EAC"), a body created under authority of Idaho Code section 67-4704. The EAC reviews the application and may require that additional information be provided before approving or rejecting the application. I.C. § 67-4739. If the application is approved, the Director enters into an agreement with the applicant consistent with the terms of the EAC's approval. I.C. § 67-4739(3). The EAC is given broad discretion to approve or deny applications for the IRIA tax credit.

In 2016, the EAC granted a tax credit of $6.5 million to Paylocity, an Illinois corporation. Employers' complaint alleged that this tax credit was a governmental subsidy to Paylocity that would give it a competitive advantage over Employers. Employers challenged the IRIA program as unconstitutional, alleging that the Legislature unconstitutionally delegated its authority over tax matters to the Executive Branch.

Ronk moved to dismiss Employers' complaint pursuant to Idaho Rule of Civil Procedure 12(b)(6), asserting that Employers lacked standing because nothing done by the EAC was directed at Employers. Ronk further contended that Employers' allegation of competitor standing was insufficient because there was only conjectural proof of injury. The district court granted the motion to dismiss, holding that Employers did not have a protectable interest in its competitive position in the marketplace. The court also found that the harm Employers alleged that it would

2

suffer was "abstract and speculative." Thus, the district court concluded that Employers did not have standing. Employers timely appealed from the district court's judgment dismissing the action.

## II. STANDARD OF REVIEW

The district court dismissed Employers' complaint pursuant to Idaho Rule of Civil Procedure 12(b)(6). In a decision issued subsequent to the district court's decision, we clarified that justiciability challenges, including those related to standing, "are subject to Idaho Rule of Civil Procedure 12(b)(1) since they implicate jurisdiction." *Tucker v. State*, 162 Idaho 11, 18, 394 P.3d 54, 61 (2017). Despite the different applicable rule, our standard of review is the same. This is because:

> There is a distinction between 12(b)(1) *facial* challenges and 12(b)(1) *factual* challenges. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir.1990); 5B [Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*], § 1350 [3d ed. (2004)]. Facial challenges provide the non-movant the same protections as under a 12(b)(6) motion. *Id.* Factual challenges, on the other hand, allow the court to go outside the pleadings without converting the motion into one for summary judgment. *Id.*

*Owsley v. Idaho Indus. Comm'n*, 141 Idaho 129, 133 n.1, 106 P.3d 455, 459 n.1 (2005). Ronk has presented a facial challenge to Employers' standing. Thus, we apply the same standard as if the motion to dismiss were governed by Idaho Rule of Civil Procedure 12(b)(6).

> When this Court reviews an order dismissing an action pursuant to I.R.C.P. 12(b)(6), we apply the same standard of review we apply to a motion for summary judgment. After viewing all facts and inferences from the record in favor of the non-moving party, the Court will ask whether a claim for relief has been stated.

*Joki v. State*, 162 Idaho 5, 8, 394 P.3d 48, 51 (2017). "[A]s a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which the plaintiff includes allegations showing on the face of the complaint that there is some insurmountable bar to relief." *Harper v. Harper*, 122 Idaho 535, 536, 835 P.2d 1346, 1347 (Ct. App. 1992) (citations omitted).

## III. ANALYSIS

Idaho's standing requirement "is a self-imposed constraint adopted from federal practice, as there is no 'case or controversy' clause or an analogous provision in the Idaho Constitution as

there is in the United States Constitution." *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 513, 387 P.3d 761, 766 (2015). We have described the traditional elements of standing[1] as follows:

> In order to satisfy the requirement of standing, a petitioner must allege or demonstrate an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury. Standing requires a showing of a distinct palpable injury and fairly traceable causal connection between the claimed injury and the challenged conduct.

*Coal. for Agric.'s Future v. Canyon Cnty.*, 160 Idaho 142, 146, 369 P.3d 920, 924 (2016) (citations and internal quotation marks omitted). Injury in fact requires the injury to "be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Tucker*, 162 Idaho at 19, 394 P.3d at 62 (quoting *State v. Philip Morris, Inc.*, 158 Idaho 874, 881, 354 P.3d 187, 194 (2015)). Causation requires the injury to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id*. at 21, 394 P.3d at 64 (quoting *Bennett v. Spear*, 520 U.S. 154, 167 (1997)). Finally,

> Standing's redressability element ensures that a court has the ability to order the relief sought, which must create a substantial likelihood of remedying the harms alleged. *See Ciszek v. Kootenai Cnty. Bd. of Comm'rs*, 151 Idaho 123, 129, 254 P.3d 24, 30 (2011); *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982). Redressability requires a showing that "a favorable decision is *likely* to redress [the] injury, not that a favorable decision will *inevitably* redress [the] injury." *Beno v. Shalala*, 30 F.3d 1057, 1065 (9th Cir. 1994). However, it cannot be only speculative that a favorable decision will redress the injury. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

*Tucker*, 162 Idaho at 24, 394 P.3d at 67.

The district court explained its determination that Employers failed to adequately allege standing as follows:

> Where there is a direct impediment to a company, then a company may be potentially harmed in a way that is sufficient to show a protectable legal interest. In contrast, when the conduct is directed at a third party, with no direct impact to the plaintiff that is traceable to the government conduct, then there is no protectable interest at stake. This is the situation in this case. The government conduct is directed at a third party, Palocity [sic] and other businesses who qualify

---

[1] In addition to this "traditional" standing analysis, this Court has also applied a "relaxed" standard in certain cases. In *Coeur d'Alene Tribe*, we noted that we will "relax ordinary standing requirements in other cases where: (1) the matter concerns a significant and distinct constitutional violation, and (2) no party could otherwise have standing to bring a claim." 161 Idaho at 514, 387 P.3d at 767. As we decide this appeal based upon the traditional standing analysis, we will not address the alternative analysis that we employed in *Coeur d'Alene Tribe*.

4

for the tax credit, and not [Employers]. The conduct has no direct impact on [Employers] that is traceable to the government conduct. Accordingly, [Employers] has no protectable interest at stake in this matter.

Additionally, [Employers] alleges that the tax refund would injure its competitive position in the market. [Employers] alleged that a tax credit has incentivized a competitor to set up its business in Idaho and [Employers] will have to do certain things to compete against this competitor. It must be noted that [Employers] is not the object of the government action. Instead, Paylocity, a third party, is the object of the government action. This fails to satisfy the requirement that there is a "substantial likelihood that the relief requested will prevent the claimed injury." [Employers] has only alleged a mere possibility that competition will increase and that there is a possibility that the increased competition will injure [Employers]. [Employers'] purported injuries are abstract and speculative and cannot be said to be specific or distinct and palpable.

. . .

The rule which [Employers] relies on to assert standing is competitor standing to establish that it has a personal stake, or distinct palpable injury. The general rule is that a competitor has standing to challenge future loss of profits. *National Tank Truck Carriers v. Lewis*, 550 F. Supp. 113, 117 (D.C. Dist. Ct. 1982). However, Idaho has not recognized competitor standing. *Martin v. Camas County*, 150 Idaho 508, 514, 248 P.3d 1243, 1249 (2011). Further, even when competitor standing has been recognized, "it is only when a successful challenge will set up an absolute bar to competition, not merely an additional hurdle, that competitor standing exists." *Id*.

. . .

[Employers] challenges the legislature's exercise of its constitutional authority. But [Employers] has no standing to challenge the Reimbursement Act because the program makes tax credits available to businesses that meet certain criteria. The program does not actually do anything to [Employers], therefore, [Employers] has suffered no particularized injury by which to establish standing in a challenge to the act. Instead, [Employers] attempts to manufacture standing by alleging it may have to do certain things or that it expects certain things will occur as a response to another company receiving a tax credit under the program. In short, [Employers] has no protectable, legal interest that has been directly damaged by the Act; the claim of injury is ill-defined, fuzzy, and speculative, essentially self-inflicted in mere anticipation and expectation of what may happen.

We start by noting a point of agreement with the district court: the challenged action is not directed at Employers. We disagree, however, with the corollary identified by the district court ("therefore [Employers] has suffered no particularized injury…."). Instead, as the United States Supreme Court has noted, "[w]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more

5

difficult' to establish." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992) (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)).

This case affords us the opportunity to more fully explain our holding in *Martin v. Camas County*. There, we observed that this Court has "never held that increased competition alone is sufficient to confer standing." *Martin*, 150 Idaho at 514, 248 P.3d at 1249. In this respect, we have adopted a somewhat more restrictive standard than the federal courts, which have adopted the doctrine of competitor standing.

> The doctrine of competitor standing addresses the first requirement [for standing] by recognizing that economic actors "suffer [an] injury in fact when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition" against them. *La. Energy & Power Auth. v. FERC*, 141 F.3d 364, 367 (D.C. Cir. 1998); *accord New World Radio, Inc. v. FCC*, 294 F.3d 164, 172 (D.C. Cir. 2002) ("basic law of economics" that increased competition leads to actual injury); *see also Canadian Lumber Trade Alliance v. United States*, 517 F.3d 1319, 1332 (Fed. Cir. 2008) (doctrine of competitor standing "relies on economic logic to conclude that a plaintiff will likely suffer an injury-in-fact when the government acts in a way that increases competition or aids the plaintiff's competitors"). The form of that injury may vary; for example, a seller facing increased competition may lose sales to rivals, or be forced to lower its price or to expend more resources to achieve the same sales, all to the detriment of its bottom line. Because increased competition almost surely injures a seller in one form or another, he need not wait until "allegedly illegal transactions ... hurt [him] competitively" before challenging the regulatory (or, for that matter, the deregulatory) governmental decision that increases competition. *La. Energy,* 141 F.3d at 367.

*Sherley v. Sebelius*, 610 F.3d 69, 72 (D.C. Cir. 2010) *vacated on other grounds*, *Sherley v. Sebelius*, 644 F.3d 388 (D.C. Cir. 2011).

Standing is a somewhat elusive concept. As we explained in *Butters v. Hauser*, 131 Idaho 498, 960 P.2d 181 (1998):

> Although the doctrine is imprecise and difficult in its application, in [*Miles v. Idaho Power Co.,* 116 Idaho 635, 778 P.2d 757 (1989)] this Court adopted a criterion which explained:

> > [t]he essence of the standing inquiry is whether the party seeking to invoke the court's jurisdiction has "alleged such a personal stake in the outcome of the controversy as to assure the concrete adversariness which sharpens the presentation upon which the court so depends for illumination of difficult constitutional questions."

*Butters*, 131 Idaho at 500–01, 960 P.2d at 183–84 (quoting *Miles,* 116 Idaho at 641, 778 P.2d at 763, and *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 72, (1978)).

We are unwilling to go as far as the federal courts in recognizing standing based upon governmental action that simply has the effect of increasing competition. *Cf. Association of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 152, 154 (1970) (sellers of data processing services "no doubt" had standing to test ruling allowing national banks to sell data processing services; injury-in-fact element met by allegations that competition from national banks "might entail some future loss of profits" and that respondent bank was preparing to perform data processing services for two of plaintiffs' customers); *Arnold Tours, Inc. v. Camp*, 400 U.S. 45, 45–46 (1970) (holding that travel agents had "competitor standing" to test ruling allowing national banks to provide travel services); *Investment Co. Inst. v. Camp*, 401 U.S. 617, 620–21 (1971) (finding "competitor standing," on the part of investment companies, to test a regulatory ruling authorizing national banks to operate collective investment funds).

In our view, increased competition—so long as it is on a level playing field—does not provide a basis for judicial intervention. That is not the case, however, when there is governmental action that alters the competitive landscape by providing an advantage to an economic competitor. To that extent, "[w]e see no reason any one [sic] . . . should not be able to assert competitor standing when the Government takes a step that benefits his rival and therefore injures him economically." *Sherley*, 610 F.3d at 72. The United States Supreme Court has noted that:

> The Court routinely recognizes probable economic injury resulting from [governmental actions] that alter competitive conditions as sufficient to satisfy the [Article III "injury-in-fact" requirement] . . . . It follows logically that any . . . petitioner who is likely to suffer economic injury as a result of [governmental action] that changes market conditions satisfies this part of the standing test.

*Clinton v. City of N.Y.*, 524 U.S. 417, 433 (1998) (*quoting* 3 K. Davis & R. Pierce, Administrative Law Treatise 13–14 (3d ed. 1994)) (bracketed material in original).

Although the district court found that Employers' claimed injury was "abstract and speculative," we agree with the First Circuit Court of Appeals that "[i]n some 'direct competitor' cases, future injury-in-fact is viewed as 'obvious' since government action that removes or eases only the competitive burdens on the plaintiff's *rivals* plainly disadvantages the plaintiff's competitive position in the relevant marketplace." *Adams v. Watson*, 10 F.3d 915, 922 (1st Cir. 1993). In a marketplace where companies are courting potential customers, it is evident that a

7

governmental subsidy to one company will have a negative effect on competitors not receiving the subsidy, satisfying the palpable injury and causation components of standing.

The district court's rejection of Employers' claim of competitor standing was, in part, based upon its view that "even when competitor standing has been recognized, 'it is only when a successful challenge will set up an absolute bar to competition, not merely an additional hurdle, that competitor standing exists.' " This quoted language is from the decision in *National Tank Truck Carriers v. Lewis*, 550 F. Supp. 113, 117 (D.C. Dist. Ct. 1982).[2] We do not view the decision in *National Tank* as instructive as to the issue presented by this appeal. There, the plaintiff sought to invalidate a rule adopted by the Department of Transportation (DOT) regarding the amount of insurance that gasoline motor carriers were required to maintain. *Id*. at 114. At the time, Section 30(b) of the Motor Carrier Act of 1980 required DOT to establish minimum insurance levels for motor carriers carrying certain hazardous substances. Section 30(b) set forth two levels: a minimum level of $5,000,000 for carriers transporting extraordinarily hazardous substances and a minimum level of $1,000,000 for those transporting other hazardous materials. *Id*. at 114–15. DOT adopted a federal regulation that did not require the higher level of insurance for those transporting gasoline. *Id*. at 115. Plaintiff alleged that its members would be injured in five ways: (1) the lower level of insurance would result in a poor safety record in the carrier industry, ultimately leading to higher insurance rates for all carriers; (2) carriers who chose to insure at the lower level would be unable to adequately compensate potential victims resulting in reputational injury to all carriers; (3) as a consequence of the reputational injury to the industry, there would be a backlash of increased regulation of all carriers; (4) because plaintiff's membership shared facilities with those electing to maintain the lower level of insurance, they were likely to be inadequately compensated victims; and (5) those selecting the lower level of coverage would see a decreased cost in doing business, which would force plaintiff's membership to either insure at the lower, allegedly inadequate level or experience reduced profits. *Id*. The court determined that the alleged injuries were "conjectural" and "not 'real and immediate.' " *Id*. at 116 (quoting *Goldon v. Zwickler*, 394 U.S. 103, 109 (1969).

---

[2] The district court's opinion erroneously identifies our decision in *Martin* as the source of this quotation.

The court's statement that "it is only when a successful challenge will set up an absolute bar to competition, not merely an additional hurdle, that competitor standing exists," upon which the district court in this action relied, was drawn from the decision in *American Society of Travel Agents, Inc. v. Blumenthal*, 566 F.2d 145 (D.C. Cir. 1977). Having carefully considered the decision in *American Society*, we are convinced that the federal district court in *National Tank* read *American Society* far too broadly, 550 F. Supp. at 117, or, if it correctly divined the *American Society* court's intended holding, that holding represented a fundamental misreading of the United States Supreme Court's decision in *Association of Data Processing Service Organizations*. In either event, we are not persuaded that the statement in *National Tank* upon which the district court relied is an accurate statement of the law of competitor standing.

Finally, as to the redressability component of standing, if Employers receives the relief it seeks, the competitive advantage currently enjoyed by Paylocity will be eliminated and the parties will compete on a level playing field. This satisfies the third component of standing.[3] For these reasons, the district court's judgment dismissing Employers' complaint must be vacated.

## IV. CONCLUSION

We vacate the judgment dismissing Employers' amended complaint and remand for further proceedings. We award costs on appeal to Employers.

Chief Justice BURDICK, and Justices EISMANN, BRODY and Justice Pro Tem KIDWELL **CONCUR.**

---

[3] We do not intend to express an opinion as to the merits of Employers' claim that IRIA is unconstitutional or that the district court should declare that the actions of the EAC are void.