# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48220

CURT VON LOSSBERG, individually, and as the father and Personal Representative of the Estate of Bryan Von Lossberg, deceased; DARA VON LOSSBERG, individually, and as the mother of Bryan Von Lossberg, deceased,

    Plaintiffs-Appellants,

v.

STATE OF IDAHO, IDAHO STATE POLICE, an Executive Department of the State of Idaho;

    Defendants-Respondents,

and

TYLER TECHNOLOGIES, INC., a Delaware corporation; ADA COUNTY, IDAHO; COMPUTER PROJECTS OF ILLINOIS, INC., a company; and JOHN/JANE DOES 1-10, identities are unknown at this time,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2022 Term

_Amended_ Opinion filed: March 17, 2022

Melanie Gagnepain, Clerk

THE COURT'S PRIOR OPINION DATED MARCH 15, 2022, IS HEREBY AMENDED.

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Steven J. Hippler, District Judge.

The judgment of the district court is <u>reversed, vacated, and remanded</u>.

Hepworth Law Offices, Boise, and Law Office of Howard A. Belodoff, PLLC, Boise, for Appellants. J. Grady Hepworth argued.

Lawrence Wasden, Idaho Attorney General, Boise, for Respondents. Cory Carone argued.

---

1

MOELLER, Justice.

Curt and Dara Von Lossberg ("the Von Lossbergs") filed this suit against the State of Idaho and the Idaho State Police after their son, Bryan Von Lossberg, ended his life with an unlawfully purchased handgun. The Von Lossbergs allege that this purchase stemmed from failures in Idaho's electronic case management system to properly report his mental health status. The district court dismissed the Von Lossbergs' claims for negligence and wrongful death, concluding that the government defendants were immune from tort liability under the immunity provisions of the Brady Handgun Violence Prevention Act ("Brady Act"). On appeal, the Von Lossbergs argue that their case should not have been dismissed because (1) the Brady Act's immunity provision does not apply to the State of Idaho, and (2) the Brady Act's immunity provision was not preserved by the Idaho Tort Claims Act. For the following reasons, we reverse, vacate, and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Bryan Von Lossberg struggled with mental illness after symptoms manifested in his mid-twenties. On November 11, 2016, the Meridian Police took Bryan into protective custody and he was hospitalized for a mental health crisis. A week later, on November 18, 2016, an Order of Commitment involuntarily placed Bryan in the custody of Idaho's Department of Health and Welfare. The magistrate court found Bryan to be "gravely disabled" due to mental illness, and determined Bryan was subject to provisions of the Brady Act, 18 U.S.C. § 922. Bryan was admitted to State Hospital South for further evaluation and treatment. While there, Bryan was diagnosed with schizoaffective disorder (bipolar type) and autism spectrum disorder (severity level 1) without accompanying intellectual impairment. Bryan spent nearly the entire month of December 2016 in State Hospital South's care. He was discharged on December 27, 2016.

Several weeks later, on February 6, 2017, Bryan visited a pawnshop where he initiated the purchase of a semi-automatic pistol. When Bryan filled out the requisite background-check forms, he falsely answered he had never been committed for mental health treatment. The pawnshop placed the pistol on layaway, pending completion of the background check, and submitted Bryan's information to the National Instant Criminal Background System (the "NICS") pursuant to state and federal law. Under the Brady Act, an individual is prohibited from purchasing any firearm or ammunition if he "has been committed to a mental institution." 18 U.S.C. § 922(d)(4) and (g)(4).

However, Bryan's order of commitment from 2016 did not appear in the NICS system; thus, Bryan was able to complete his purchase of the handgun on February 10, 2017.

The same day Bryan picked up the pistol from the pawnshop, he called his father, saying "he had a gun 'under his chin' and was threatening to commit suicide by shooting himself." The Von Lossbergs stayed on the phone with Bryan for 45 minutes, pleading with him to put the gun away. As they spoke with him, they also began an hours-long search for their son. Tragically, the search ended with the discovery of Bryan's body in a shed behind his home. He died of a self-inflicted gunshot wound.

Following an investigation, the Von Lossbergs filed a complaint against Tyler Technologies, Inc., the State of Idaho (the "State"), the Idaho State Police (the "ISP"), and Ada County. They alleged several claims in their complaint, including negligence, negligence per se, wrongful death, negligent training and supervision, and negligent and intentional infliction of emotional distress. The basis for the Von Lossbergs' claims is that Bryan's purchase was only possible because of systemic errors and the failures of state actors.

To support their theory of the case, the Von Lossbergs aver that "Bryan's Order of Commitment was not properly received from the Ada County Clerk's office and the magistrate court due to an error in the State of Idaho's Odyssey iCourt filing system, as well as the failure of Defendants to address or otherwise mitigate the known error." They allege in their complaint that the following systemic errors contributed to the defendants' failure to properly enter Bryan's order of commitment into the NICS database:

36. On or about August 8, 2016, Ada County launched the iCourt system as designed and implemented by Tyler Technologies, Inc. The iCourt system was represented to improve access to court records, to provide better information exchanged between judicial partners, and to increase efficiencies within the judicial system. The Odyssey software was promoted to have the capability to file, serve, distribute and deliver files electronically in an expedient and reliable manner.

37. The Odyssey software was to have the ability to improve data exchange with the Idaho Judicial Branch's justice partners, including the ability to create and extend data interfaces with other ancillary systems like the NICS.

38. Defendants failed to implement any type of check or system to determine whether Commitment Orders were being received by the ISP from the Ada County Clerk's office and the magistrate's court because there was no auditing system that monitored when the ISP received, accepted, and processed the information.

3

39. Bryan's Order of Commitment was never fully processed because of Defendants' failure to fix and/or address the error, or otherwise ensure the laws of the State of Idaho were properly implemented.

More specifically, the Von Lossbergs assert that when the State of Idaho processes an order of commitment, it must send the order to a message server known as the "Message Switch." From there, the orders are processed and delivered to the Idaho State Police and then the NICS. The State of Idaho contracts with Computer Project of Illinois, Inc. ("CPI"), to process and deliver these orders from the Message Switch to the State, the ISP, and the NICS. However, the Von Lossbergs allege that CPI's system contained a known failure that would not recognize "the naming conventions and document format used by the State of Idaho and Tyler [Technologies] for Bryan's Order of Commitment." Consequently, Bryan's order was never processed or transferred to the NICS database.

Each of the defendants also moved to dismiss the lawsuit under Rules 12(b)(1) and 12(b)(6) of the Idaho Rules of Civil Procedure, with the State and the ISP claiming immunity from tort liability under the Brady Act. The district court granted the government defendants' motion, dismissing the complaint against them upon finding the Von Lossbergs' tort claims were barred by the Brady Act's immunity provisions, 18 U.S.C. § 922(t)(6). While the case proceeded for a time against Tyler Technologies and a new defendant, CPI, these claims were eventually all dismissed with prejudice. The Von Lossbergs have only appealed the district court's dismissal of their claims against the State and the ISP.

## II. STANDARD OF REVIEW

The district court granted the government defendants' motion to dismiss the complaint pursuant to Idaho Rule of Civil Procedure 12(b)(1): lack of subject matter jurisdiction. The State and the ISP have presented a facial challenge to the Von Lossbergs' claims, arguing that the complaint, as written, does not give rise to subject matter jurisdiction. This Court has held that there is a distinction between facial challenges made under 12(b)(1) and factual challenges. *Emps. Res. Mgmt. Co. v. Ronk*, 162 Idaho 774, 776–77, 405 P.3d 33, 35–36 (2017). "Facial challenges provide the non-movant the same protections as under a 12(b)(6) motion"; thus, they are reviewed under the same standard. *Id.* A factual challenge "allow[s] the court to go outside the pleadings without converting the motion into one for summary judgment." *Id.* Inasmuch as this case concerns

a facial challenge, we will apply the same standard of review as if the motion to dismiss the action occurred pursuant to Rule 12(b)(6). *See id.*

When reviewing an order dismissing an action under Idaho Rule of Civil Procedure 12(b)(6), we apply the same standard of review applied to a motion for summary judgment. *Joki v. State*, 162 Idaho 5, 394 P.3d 48, 51 (2017). "After viewing all facts and inferences from the record in favor of the non-moving party, the Court will ask whether a claim for relief has been stated." *Id.* Dismissal under Rule 12(b)(6) is granted "only in the unusual case in which the plaintiff includes allegations showing on the face of the complaint that there is some insurmountable bar to relief." *Emps. Res. Mgmt. Co.*, 162 Idaho at 777, 405 P.3d at 36 (quoting *Harper v. Harper*, 122 Idaho 535, 536, 835 P.2d 1346, 1347 (Ct. App. 1992)).

This Court exercises free review over jurisdictional issues because they are questions of law. *Tucker v. State*, 162 Idaho 11, 17, 394 P.3d 54, 60 (2017). Likewise, "[s]tatutory interpretation is a question of law that receives de novo review from this Court." *State v. Burke*, 166 Idaho 621, 623, 462 P.3d 599, 601 (2020). We begin statutory interpretation

> with the literal language of the statute, giving words their plain, usual, and ordinary meanings. In addition, provisions are interpreted within the context of the whole statute, not as isolated provisions. This includes giving effect "to all the words and provisions of the statute so that none will be void, superfluous, or redundant." Where the language is unambiguous, we need not consider the rules of statutory construction. "Ambiguity is not established merely because differing interpretations are presented to a court; otherwise, all statutes subject to litigation would be considered ambiguous."

*Id.* (citations omitted).

### III. ANALYSIS

This appeal concerns a narrow question of immunity: specifically, whether the State and the ISP are immune from the Von Lossbergs' tort claims under the Brady Act, 18 U.S.C. 922(t)(6). The Von Lossbergs argue the Brady Act's grants of immunity do not apply to the State or the ISP because their negligence and wrongful death claims "arise under state law," and neither the State nor the ISP qualify as "local governments" or "employees of any state or local government," as required by the Brady Act. Defendants contend the Brady Act's immunity provision applies to them, under both the federal statute and as incorporated by the Idaho Tort Claims Act ("ITCA").

At the time the district court heard this case, the court and parties relied on a federal district court case from South Carolina, *Sanders v. United States*, 324 F. Supp. 3d 636, 647 (D.S.C. 2018)

5

(hereinafter "*Sanders I*"). However, *Sanders I* was later reversed and remanded by the Fourth Circuit Court of Appeals shortly after the Von Lossbergs' complaint was dismissed. *Sanders v. United States*, 937 F.3d 316 (4th Cir. 2019) (hereinafter "*Sanders II*").[1] In light of the Brady Act's plain language and recent federal decisions, we agree with the Von Lossbergs that federal immunity does not extend to the State or the ISP.

### A. The Brady Act's immunity provisions do not apply to the State or the ISP.

In 1993, Congress passed the Brady Act to amend the earlier Gun Control Act of 1968, 18 U.S.C. §§ 921–931. *Printz v. United States*, 521 U.S. 898, 902 (1997). The Brady Act's purpose was to prohibit certain individuals from buying, owning, or possessing firearms, as well as to establish a nationwide background system to identify these individuals—the NICS. *Id.*; *Sanders II*, 937 F.3d at 322. Under the Brady Act: "It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . has been adjudicated as a mental defective or has been committed to any mental institution." 18 U.S.C. § 922(d)(4). Likewise, "[i]t shall be unlawful for any person . . . who has been adjudicated as a mental defective or who has been committed to a mental institution" to possess "any firearm or ammunition." 18 U.S.C. § 922(g)(4).

In a commitment proceeding, when a trial court makes a finding that the subject of the proceeding "is a person to whom the provisions of 18 U.S.C. 922(d)(4) and (g)(4) apply," Idaho law requires the clerk of the court to forward a copy of the order of commitment to the ISP, "which in turn shall forward a copy to the [F]ederal [B]ureau of [I]investigation, or its successor agency, for inclusion in the [NICS] database." I.C. § 66-356(1). *See also* I.C. § 67-3003(1)(i) (separate section requiring the ISP to electronically transmit to the NICS information concerning individuals' "eligibility to receive or possess a firearm pursuant to state or federal law.").

At issue here is the Brady Act's express immunity provision related to these data transfers. It states:

> Neither a local government nor an employee of the Federal Government or of any
> State or local government, responsible for providing information to the national

---

[1] To avoid confusion, we note that the district court also used "*Sanders I*" and "*Sanders II*" in its memorandum decision, but to distinguish between two rulings made by the United States District Court of South Carolina. The district court in this case never considered the Fourth Circuit Court of Appeals' opinion—referred to as *Sanders II* in this opinion— because it was published in the period between the dismissal of the complaint against the government defendants (in 2018) and the Von Lossbergs' appeal (in 2020).

6

instant criminal background check system shall be liable in an action at law for damages--

> (A) for failure to prevent the sale or transfer of a firearm to a person whose receipt or possession of the firearm is unlawful under this section; or
>
> (B) for preventing such a sale or transfer to a person who may lawfully receive or possess a firearm.

18 U.S.C. § 922(t)(6). It is undisputed that the case at hand concerns the exact conduct immunized by section 922(t)(6). The parties dispute only whether the immunity granted by this provision extends to the State and the ISP.

Generally, under the doctrine of sovereign immunity, "a governmental unit can only be sued upon its consent." *See, e.g.*, *Bott v. Idaho State Bldg. Auth.*, 128 Idaho 580, 591, 917 P.2d 737, 748 (1996). The Idaho Tort Claims Act ("ITCA"), for example, is a limited waiver of sovereign immunity by the State of Idaho, "with the purpose of providing 'much needed relief to those suffering injury from the negligence of government employees.' " *Hollingsworth v. Thompson*, 168 Idaho 13, 20, 478 P.3d 312, 319 (2020). Parallel to such waivers, statutory immunity provisions can shield specified parties and actions from suit. *See*, *e.g.*, 18 U.S.C. § 922(t)(6).

In looking at the plain language of the Brady Act's immunity provision, the federal law expressly states: "Neither *a local government* nor *an employee* of the Federal Government or *of any State* or local government, . . . shall be liable in an action at law for damages . . ." 18 U.S.C. § 922(t)(6) (emphasis added). The immunity provision also applies only where an actor is "responsible for providing information to" the NICS. *Id.* Thus, the Brady Act expressly bars any "action at law for damages" asserted against "a local government" or "an employee" of federal, state, or local government "responsible for providing information to" the NICS. *Id.* Neither a "state government" nor the "federal government" are listed as immune entities. Because "local government" is the only listed entity receiving immunity, the question then becomes whether "local government" includes a state or its agencies, such as the State of Idaho and the ISP.

"Local government" is not defined under the statute. *See* 18 U.S.C. § 921. Black's Law Dictionary defines "local government" as "[t]he government of a particular locality, such as a city, county, or parish; a governing body at a lower level than the state government." *Government*, BLACK'S LAW DICTIONARY (11th ed. 2019). Indeed, "local government" is often interchangeable

7

with "municipal government." *Id.* This plain interpretation and common understanding is exclusive of the higher state government operations and its respective agencies.

In drafting the Brady Act, Congress was certainly aware of the general governmental distinctions used to categorize the types of government employees entitled to immunity (*i.e.*, federal, state, and local), but it only granted immunity to one of those types of government entities: local government. Neither state nor federal governments were included. The doctrine *unius est exclusion alterius* ("to express or include one thing implies the exclusion of the other") applies under these circumstances. *Holcombe v. United States*, 388 F. Supp. 3d 777, 797 (W.D. Tex. 2019), *motion to certify appeal denied*, No. 5:18-CV-1151-XR, 2019 WL 13080126 (W.D. Tex. Sept. 10, 2019). Therefore, the Brady Act's immunity provision plainly does not extend to federal or state governments.

The district court, in construing *Sanders I*, stated that "[t]he plain language of § 922(t)(6)(A) mandates that is [sic] apply to any 'action at law for damages' asserted against a local, state or federal entity . . . ." This is an incorrect and overly expansive interpretation of the statutory language. The plain language of the statute only extends immunity to "local governments" and *employees* of federal, state, and local governments. 18 U.S.C. § 922(t)(6). It does not include state or federal entities in its grant of immunity.

Although not binding on this Court, we find it additionally persuasive that this interpretation is now being applied in federal courts. The main case that has examined the applicability of the Brady Act's immunity provision is the Fourth Circuit's analysis in *Sanders II*, 937 F.3d at 334. Importantly, the Fourth Circuit reversed and remanded the original *Sanders I* case relied upon by the district court in its decision dismissing the Von Lossbergs' complaint. *Sanders I*, 324 F. Supp. 3d at 647, *rev'd and remanded, Sanders II*, 937 F.3d 316. Unfortunately, neither the parties nor the district court had access to the holding in *Sanders II* when the case was decided below.

In *Sanders II*, the Fourth Circuit interpreted 18 U.S.C. § 922(t)(6) in the light of whether the federal government was immune from a negligence suit for lapses in the NICS following a mass shooting in a South Carolina church. 937 F.3d at 321. In looking at the plain text of the Brady Act, the Fourth Circuit determined "this provision grants immunity only to 'a local government' or 'an employee of the Federal Government or of any State or local government.' " *Id.* at 334. In

other words, "the statute distinguishes between immunity for employees at all three levels of government, on the one hand, and immunity for only local governments, on the other." *Id.* Because of this distinction, the Fourth Circuit concluded that "Congress intended to exclude the Federal Government from the grant of immunity." *Id.* A similar analysis was followed by a U.S. District Court in the Western District of Texas, where the court concluded "the Brady Act is unambiguous in specifying the people and entities immune from liability in providing information to NICS," for it lists only "local governments and employees of federal, local, and state governments." *Holcombe*, 388 F. Supp. 3d at 797.

Our issue on appeal is ultimately a narrow one: whether the Brady Act grants immunity to the State and its agencies. We conclude it does not. Certainly, Congress cannot waive Idaho's sovereign immunity. *Alden v. Maine*, 527 U.S. 706, 754 (1999) ("States retain immunity from private suit in their own courts, an immunity beyond the congressional power to abrogate by Article I legislation."). Nor can a government be sued without its consent. *See, e.g.*, *Tucker v. State*, 162 Idaho 11, 17–18, 394 P.3d 54, 60–61 (2017). However, the State has not presented an argument on appeal, nor did is assert below, that any other source of immunity exists. It has hinged its arguments entirely on the Brady Act, including whether its immunity provisions have been incorporated into Idaho law under the ITCA, I.C. § 6-903(6). This narrow argument may have left unanswered questions at the door—specifically, whether the State has waived its sovereign immunity through the ITCA, or other laws, to permit the Von Lossbergs' suit—but our "review on appeal is limited to those issues raised before the lower tribunal." *Neighbors for a Healthy Gold Fork v. Valley Cnty.*, 145 Idaho 121, 131, 176 P.3d 126, 136 (2007).

As for the State's incorporation arguments, our plain interpretation of 18 U.S.C. § 922(t)(6) is dispositive of this issue. The incorporation of federal immunity is relevant only if that immunity actually extends to the State. Because the Brady Act only grants such immunity to local governments—not state governments—whether the ITCA incorporated it becomes a moot point that we need not address. Other citations by the State to the ITCA in connection to the Brady Act similarly fail to deal with either immunity or its waiver. *See* I.C. §§ 66-356(1)(f) (requiring a court to make a finding that the Brady Act's prohibitions apply to a defendant who was involuntarily committed); 67-3003(1)(i) (a separate section requiring the ISP to electronically transmit to the

NICS information concerning individuals' "eligibility to receive or possess a firearm pursuant to state or federal law.").

In making its arguments, the State also points us to *Miller v. Idaho State Police*, 150 Idaho 856, 252 P.3d 1274 (2011), and the doctrine of *respondeat superior*. The State argues that under *Miller*, the Brady Act's grant of immunity to "John and Jane Doe state employees" extends upward to grant immunity to the State and the ISP, and that an employer cannot be held liable where the employee cannot. However, neither *Miller* nor the doctrine of *respondeat superior* apply to this case for two key reasons. First, unlike the plaintiffs in *Miller*, the Von Lossbergs filed their complaint against state entities, not individual or identifiable employees. Nothing in the Brady Act even suggests that the involved employees are indispensable parties to such an action. Second, and most importantly, the Brady Act specifically distinguishes between immune *entities* and immune *employees*—a distinction that would be superfluous under the State's interpretation that its liability first requires a State employee's liability. Such a course is untenable. We "must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant." *State v. Schulz*, 151 Idaho 863, 866–67, 264 P.3d 970, 973–74 (2011) (quoting *Farber v. Idaho State Ins. Fund*, 147 Idaho 307, 310, 208 P.3d 289, 292 (2009)).We also cannot agree that a government employee's immunity under the Brady Act extends into full-fledged sovereign immunity for the respective employer. To accept the State's argument would render the Brady Act's immunity provision null and void, for its interpretation would mean that a party could not sue the State without naming an employee as a party and, since all employees would be immune, no case could ever be brought.

Looking back to *Sanders II* and *Holcombe*, the federal courts in each case reached the same conclusion we have in responding to similar arguments. They also rejected the government defendants' arguments that immunity applied to the United States through its employees. *Sanders II*, 937 F.3d at 334; *Holcombe*, 388 F. Supp. 3d at 798. For "[i]f federal and local governments enjoyed immunity through their employees, Congress would not have needed to single out 'local governments' for immunity in the statute." *Sanders II*, 937 F.3d at 334. We agree with this logic. Based on the plain language of the Brady Act, we conclude that 18 U.S.C. § 922(t)(6) does not extend immunity to the State of Idaho or the ISP, only to local governments and the employees of

federal, state, and local government. Therefore, we hold that the district court erred in dismissing the Von Lossbergs' case on that basis.

## IV. CONCLUSION

For the foregoing reasons, we reverse the district court's order dismissing the Von Lossbergs' complaint. Accordingly, we vacate the judgment entered against the Van Lossbergs and remand this case for further proceedings consistent with this opinion. As the prevailing party on appeal, the Von Lossbergs are entitled to costs as a matter of right. I.A.R. 40(a).

Chief Justice BEVAN, Justice STEGNER, and Justices Pro Tem BURDICK and HORTON **CONCUR.**